## ALLEN *v.* STATE.

(Division B. April 6, 1936.)

[166 So. 922. No. 32128.]

**L. J. Broadway**, of Meridian, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

Argued orally by **L. J. Broadway**, for appellant, and by **W. D. Conn, Jr.**, for the state.

**Ethridge, P. J.**, delivered the opinion of the court.

The appellant, J. A. Allen, a man past fifty years of age, was indicted under section 826, Code of 1930, for violation of the person of a female child under thirteen years of age, being between eight and nine years of age, which section reads as follows: "Any male person above the age of eighteen years, who, for the purpose of gratifying his lust, or indulging his depraved licentious sexual desires shall handle, touch or rub with hands or any part of his body or any member thereof, any

female child under the age of thirteen years, with or without her consent, shall be guilty of a high crime and upon conviction thereof, shall be fined in any sum not less than ten dollars nor more than one thousand dollars, or be imprisoned in the state penitentiary not less than one year nor more than ten years, or be punished by both such fine and imprisonment, at the discretion of the court.''

The indictment charged: ''That J. A. Allen, a male person, above the age of eighteen years, in said County, on the ——— day May, A. D., 1935, did unlawfully, wilfully and feloniously, for the purpose of gratifying his lust and indulging his depraved sexual desires, handle and touch with his hands the body of Georgie Leon Terrell, then and there a female child under the age of thirteen years and of the age of eight years, and the said J. A. Allen being then and there, as aforesaid, a male person above the age of eighteen years,'' etc.

The proof was sufficient to sustain the allegations of the indictment, and we do not deem it necessary to set out the details of the evidence.

When Mrs. Allen, the wife of the defendant, was testifying, she having been introduced by the appellant, she was asked the following questions and answered as follows:

''Q. Mrs. Allen, I want to ask you if on the morning after this occurrence when Mrs Stone, the little girl's mother, was on her way back from the grocery store passed your house, didn't you call to her, and when you were all alone say that your husband had bothered ten other little girls? A. No sir. (Counsel object, court sustained as to ten other girls.)

''Q. I want to show the conversation, what happened, what went on? A. I did not call her.

''By the court: Sustained as to the other girls.''

On cross-examination, Mrs. Stone, who was called in rebuttal of the appellant's witness, was asked by the

district attorney the following questions, to which she replied as follows:

"Q. I will ask you if you had a conversation with Mrs. Allen, the wife of Mr. J. A. Allen, on the morning after this occurrence, when you were on your way to the grocery store and she called you in her house. A. I did. (Objected to as not being in rebuttal, overruled by court.)

"Q. Was Mr. Allen in hearing of that conversation? A. No, he was sitting in another room.

"Q. Will you tell the court and jury what she had to say? A. She was standing on the porch as I passed on the sidewalk, the sidewalk runs on up along with the porch, and she spoke, she was very nervous, she asked me—she spoke and asked me. how was the baby, and would I go in she wanted to talk to me. She hoped I was not hurt with her. She was nervous and excited, she felt it her duty to talk, but she hated to. She just whispered, said 'don't let Mr. Allen hear.' I went in the kitchen, sat down in her kitchen, she said she was sorry for what happened and unless the baby was hurt, she hoped I wouldn't bring her into it. She wanted to tell me what happened. She said Mr. Allen had many years ago—" (objected to, by the court sustained. Counsel asked for a mistrial because of prejudicial testimony, by the court overruled.) "She had watched the little girl, the little children that played around that way. Miss Hill had a club meeting, and they were supposed to go. She knew I was off at work. She had sent the child away, but all the children played in front of her house and the children came and sat on the door stop; they wanted to buy ice cream, and she decided she had better not go to church. She left the house just as if she was going to church with Miss Hill, went around the block and back and set down in the front part of the house. She seen the baby go in there, heard him call her. She didn't go in, but she heard her say 'turn me loose,' 'let me go.' She said she started through that way but the

house was locked and she went through another door. Before she got in there, she saw him push the baby in the kitchen. She went through the door, the baby was excited. She asked her what was the matter and the baby was just scared to death and says 'your wife'—said that was all she could get out of her, she was trembling all over. The back door was locked was why she could not get in there. She told her not to come back any more. She was awful sick and she hoped I was not mad with her. She was awful nervous, she was not well, she felt awfully disgraced, and she would be a witness, but she rather I wouldn't bring her to court."

We think it was highly prejudicial for the district attorney to undertake to get before the jury any statement of the wife of the appellant that he had "fooled" with some other little girls. The court properly sustained objections to this testimony.

We do not feel that we should reverse the case because of the statement of this witness because she was not allowed to state what the wife of the appellant said concerning the ten other little girls.

In our opinion, it is the duty of prosecuting attorneys to confine themselves to the legal evidence, and they should not inject extraneous and prejudicial matters into the jury box through questions, even though the court sustains objection to such questions. In cases of the character here involved, the nature of the crime is revolting and tends to generate prejudice against the defendant, and when that is coupled with suggestions that a man may have been guilty of previous offenses with other children, it is improper to throw into the jury box any such suggestions, although they are mere questions asked by the attorney and not responded to by the witness.

While we do not reverse the case for this error, we desire to call to the attention of prosecuting officers throughout the state the fact that no prejudicial question, the answer to which would necessarily be incom-

petent, should be asked. A defendant is entitled to a fair and impartial trial on the merits of the case. The question of his guilt or innocence of the crime charged should go to the jury on the legal testimony, unhampered by suggestions of any former crime which would prejudice the jury.

After the verdict was rendered, there was a motion for a new trial on the ground that the defendant was insane. The court heard testimony thereon, and overruled the motion.

There was testimony which strongly tended to show that the defendant was either insane or weak-minded to a considerable degree. However, we think there was also sufficient evidence at the time the offense was committed to show that the appellant knew the difference between right and wrong.

The facts developed on insanity must have been known to the wife of the appellant, and his mental condition could have been easily discovered prior to the verdict of the jury. The showing does not come up to the standard required for newly discovered evidence, but even if it did, there was a conflict in the testimony, and the judge was warranted in finding, on the motion for a new trial, that the appellant was not, in fact, insane.

Affirmed.