PITTMAN *v.* STATE.

No. 41137          April 27, 1959          111 So. 2d 415

*R. E. Steen, Charles R. Holladay,* Picayune, for appellant.

594

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

Lee, J.

Joe Pittman, 23 years of age, was indicted under Section 2052, Code of 1942 Rec., for violating the person of an eleven year old girl. The jury found him guilty as charged, and the court sentenced him to serve a term of ten years in the state penitentiary. From the judgment entered, he appealed.

Between 4:30 and 5:00 o'clock on the morning of May 24, 1958, Patricia McRee, eleven years and nine months of age, sleeping with a younger sister in a downstairs bedroom of her home in the City of Picayune, was awakened to find a Negro standing over her with his hands on her legs under the pants of her short pajamas. She was frightened and asked "What do you want?" His reply was a most indecent sexual proposal indicative of a sodomic desire. She said "no", and he then asked "Do you love me" and she replied "no." She told him to get out and he left. She said that it was fairly light; and that the curtains were open and the blinds were broken; and, on that account, she could see through them as there were street lights both north and south of the dwelling. She also said that she could see both his face and his form; that he was bending over about a foot away from her; and that he was wearing slacks or jeans and a T-shirt with the sleeves tied around his neck. She immediately called to her mother and father, saying there was a Negro in the house. The occurrence was promptly reported to the officers.

R. R. McRee, the girl's father, found that a dining room screen had been pushed inward and one of the chairs was directly beneath the window, sitting in a flower bed.

During the day, officers picked up a Negro man and two of his sons; but when they were presented to the girl, she could identify neither of them. Six Negroes was brought in next, but, while the girl saw a resemblance in two of them, she would not identify either of them as the assailant. Later in the day, the defendant was presented to her and she promptly identified him by his looks and his voice.

R. R. McRee was a switchman for the Southern Bell Telephone and Telegraph Company and the defendant had been a part-time janitor in the company's office at Picayune. On three occasions he had gone to the

McRee home: Once, to sharpen a tool on McRee's emery wheel; on another occasion, to pick up chairs and tables for use when the employees were having a barbecue; and the third time, to return the chairs and tables. On the occasion of the barbecue, Patricia ate some of the chicken which the defendant had cooked. She told him that it was good, and he said, "Thank you, mam."

During the trial the girl repeatedly identified the defendant as the one who had violated her person.

The defense was an alibi. Pittman testified that he was 23 years of age, and that he, his brother James, and two other Negroes were in Columbia that night until they returned to Picayune about 3:00 o'clock in the morning; that he took these Negroes to their respective homes; that he then went to the "High Hat" about 3:30 A. M. where he drank some beer; and that he went to "Red Eye's" place at 4:00 o'clock and remained there until 5:50, during which time he was shooting dice and drinking corn whiskey. He admitted that he saw the little girl the night of the barbecue and that he had the stated conversation with her.

James Pittman gave corroboration about the trip to Columbia, and in addition said that they also went to Bogalusa where they drank some beer. Jesse Causey testified that he saw the defendant at Jackson Hall's place about 3:30 that morning and gave him a drink and that he returned to the place about 5:50. James Edward Lee testified that he and the defendant drank some beer at Jackson Hall's place about 3:30; that they and two other Negroes went to his place about 4:00 o'clock and stayed there, having a little game and drinks, until the 5:30 whistle blew. Louella Mark testified that she was at Lee's place when the defendant and the other Negroes came in about 4:00 or 4:30 o'clock and that the Negroes left at first daybreak.

The appellant assigns and argues that he was entitled to a directed verdict; that there was no corroborating

evidence or proof of intent to commit the crime; that the evidence was insufficient to prove his guilt; that the statement of a deputy sheriff concerning a liar's test was erroneously admitted; and that he was at least entitled to a new trial as the verdict was against the great weight of the evidence.

The offense charged is both factually and historically different in its nature and essentials from the common law offense of rape and the statutory enlargement of that crime. Love v. State, 211 Miss. 606, 52 So. 2d 470. The testimony of the outraged female does not have to be corroborated as is required, for instance, in the violation of the age of consent, Section 2360, Code of 1942 Rec., or in seduction, Section 2374 of the Code.

In the case of Allen v. State, 175 Miss. 745, 166 So. 922, affirmed by this Court, the prosecuting witness, on whose testimony the conviction rested, was several years younger than the little girl in the present case. See also St. Amant v. State, 227 Miss. 485, 86 So. 2d 455; Maddox v. State, (Miss.) 93 So. 2d 649.

The facts, as heretofore stated, with the assailant's hands where they were, together with the words which he used, clearly showed his intent, and that the crime, defined and punishable under Section 2052, Code of 1942 Rec., was committed.

The reference to the liar's test arose in the redirect examination of Deputy Sheriff Moody, when he was asked: "Since he raised the question about why you held two Negroes in jail, what purpose were two of them held for several days?" And he replied: "We held Renay on the dogs and George Vaught Moody carried them both to Jackson to take a liar test and . . ." Following this question and answer, counsel for the appellant objected, and then the District Attorney said that the parties were held on agreement. At this juncture the court said: "I don't know that it is material either way

. . . those details arose after they made the investigation . . ." The witness was then dismissed, the State rested, and the defendant moved for a directed verdict of not guilty. After the motion had been overruled, the defendant then asked for a mistrial because of the statement by the witness. There was no effort whatever to show the result of a liar's test; and it is inconceivable that such a statement could have prejudiced the appellant in any way. After all, the motion for a mistrial was not timely made, and apparently it was an afterthought.

The verdict can not be said to be against the great weight of the evidence. ██ ██ The jurors were the judges of the weight, worth and credibility of the evidence both for the State and the defendant. The alibi was vouched for by parties with whom the defendant had been drinking and gambling much of the night. Moreover, on the three occasions when he was in and about the home of the little girl he had ample opportunity to become acquainted with the situation and layout of the building. Besides the courtesy of the little girl in complimenting his cooking could have set in motion false ideas in his mind.

No reversible error appears in the record and the cause must therefore be affirmed.

Affirmed.

*McGehee, C. J.,* and *Roberds, Ethridge* and *Gillespie, JJ.,* concur.