## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-00019-SCT

*TOMMIE WEATHERSPOON*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT: 08/15/96

TRIAL JUDGE: HON. ROBERT LOUIS GOZA, JR.

COURT FROM WHICH APPEALED: MADISON COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT: RICHARD FLOOD

ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: JEAN SMITH VAUGHAN

DISTRICT ATTORNEY: TOMMY SAVANT

NATURE OF THE CASE: CRIMINAL - FELONY

DISPOSITION: AFFIRMED - 01/14/99

MOTION FOR REHEARING FILED:

MANDATE ISSUED: 4/8/99

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

### PART ONE

¶1. This is a direct appeal from the conviction of Tommie Weatherspoon for possession of cocaine. Trial was held on August 12, 1996, where at its conclusion the jury returned a verdict of guilty. After reviewing the presentence report and hearing the defendant, the circuit court sentenced Weatherspoon on August 15, 1996, to a term of three years in the custody of the Mississippi Department of Corrections.

¶2. Weatherspoon was indicted during the 1995 September Term of the Circuit Court of Madison County for possession of the controlled substance cocaine. Prior to trial, Richard Flood, appointed counsel for Weatherspoon, filed two motions, one requesting the circuit court to order Weatherspoon and the arresting officer to take a polygraph test and the second requesting the circuit court to provide funds for a fingerprint expert for Weatherspoon. On June 20, 1996, both of these motions were denied.

¶3. At trial the three witnesses who testified on behalf of the State were the arresting officer, a narcotics

investigator for the Canton Police Department, and a crime lab expert employed by the Mississippi Crime Laboratory. On behalf of the defense, Weatherspoon testified along with two other witnesses that were present at the scene when the arrest took place. Following the conviction and sentencing, Weatherspoon moved for a Judgment notwithstanding the verdict or in the alternative a new trial asserting the same issues that are now presented for this Court's consideration. This motion was denied on November 5, 1996. Soon after, Weatherspoon filed his notice of appeal.

## STATEMENT OF THE LAW

## I.

## THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT THE FUNDS FOR A FINGERPRINT EXPERT TO EXAMINE THE "MATCHBOXES" FOR HIS FINGERPRINTS.

¶4. Office Wyman, the arresting officer of the defendant, testified as follows at trial:

Q. Would you tell the jury, please, what happened once you were sent out on that call?

A. Okay. I proceeded to Walnut and Dinkins Street. I proceeded over there, and we'd had several calls in the area about shots fired. And upon arrival on the scene, there were - - there were several black males standing beside a car in the general area that I was sent to. So I stopped my car, called out, and asked them if they had seen anybody fire a weapon or if anything was going on. And one of the people out there was the Defendant, Tommie Weatherspoon. And I'd asked him, and he had told me that he hadn't seen anything. And he had his hands in his pocket. He had on, like, a jacket. And I asked Mr. Weatherspoon to take his hands out of his pocket because, you know, I'm here on a gun call, I explained to him, for my safety and his. So he took his hands out. And I'm - - he was - - there was another man standing beside him, and I was speaking to him. *And as I did, Tommie reached in his pocket, in his right pocket with his right hand, pulled out - - pulled it out and tossed two matchboxes into a ditch.* And at that time my backup arrived, and I asked Mr. Weatherspoon to place his hands on the car, and I cuffed him. And I asked my backup officer, Officer Owens, Robert Owens, to stay there, right there where those boxes, where I saw him toss them and to watch them. *I took Mr. Weatherspoon and placed him in the car after I searched him and went back and retrieved the boxes.* And they had - - one of them had about 14 rocks of what appeared to be crack cocaine. And the other box had residue of what appeared to be crack cocaine.

Q. At the time you - - did you recover the boxes?

A. Yes, sir.

Q. And what did you do with them when you recovered them?

A. I turned them over to the narcotics agent, Officer Draine.

¶5. In the instant case, Officer Wyman testified that he saw the defendant throw the two matchboxes into the ditch. The defendant denied having the two matchboxes. A fact issue for the jury to determine was thus presented. Weatherspoon requested and was denied a fingerprint expert to analyze the matchboxes and

thereby solve the factual dispute. However, it is questionable whether a fingerprint expert would have been helpful in this case. First, common sense dictates the lay conclusion that matchboxes are unlikely to produce a reasonable, reliable print. Second, a "catch-22" situation arises regardless of the findings deduced from an analysis. If the defendant's prints had been found on the box, he would have used state funds to impeach himself. The absence of matching fingerprints would prove nothing. The evidence would still consist of Officer Wyman's testimony balanced against the defendant's denials. The jury question would remain.

¶6. We have previously addressed the issue of whether an expert should be appointed at the request of an indigent defendant. In ***Johnson v. State***, 529 So. 2d 577 (Miss.1988), we upheld the lower court's denial of the defendant's request for a fingerprint expert. Writing for the Court, Justice Prather stated:

> In ***Johnson I***, this Court noted that on this very issue, the U.S. Supreme Court left undisturbed this Court's holding that the Constitution does not require a state to furnish an indigent defendant with expert or investigative assistance upon demand. [***Johnson v. State***, 476 So. 2d 1195, 1202 (Miss. 1985)](*citing* ***Caldwell v. Mississippi***, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231(1985)). . . . This Court weighs on a case by case basis whether the denial of expert assistance for an accused is prejudicial to the assurance of a fair trial and will grant relief only where the accused demonstrates that the trial court's abuse of discretion is so egregious as to deny him due process and where his trial was thereby rendered fundamentally unfair.

***Johnson***, 529 So. 2d at 589-90. Further, in ***Green v. State***, 631 So. 2d 167 (Miss. 1994), we confirmed our position regarding court appointed experts by stating:

> An indigent's right to defense expenses is 'conditioned upon a showing that such expenses are needed to prepare and present an adequate defense.' ***Ruffin v. State***, 447 So. 2d 113, 118 (Miss. 1984). Concrete reasons for requiring an expert must be provided by the accused. ***Hansen v. State***, 592 So. 2d 114, 125 (Miss. 1991).

***Green***, 631 So. 2d at 171.

¶7. Historically, we have granted the trial court broad discretion in determining the need for court appointed experts. As Justice Prather stated in ***Johnson***:

> There is no single test for determining whether the services of an investigator or an expert are necessary; that decision will depend on the facts and circumstances of the particular case and must be committed to the sound discretion of the court to which the request for expenses is directed.

***Johnson***, 529 So. 2d at 590 (*quoting* ***Ruffin v. State***, 447 So. 2d 113, 118 (Miss. 1984)).

¶8. We must determine whether Weatherspoon was denied a fundamentally fair trial due to a clear abuse of discretion by the trial court. The State's sole witness during trial was Officer Wyman who testified that he observed Weatherspoon toss two matchboxes into a ditch. Weatherspoon was given ample opportunity to cross-examine Officer Wyman concerning his testimony. Weatherspoon rebutted Wyman by testifying that the matchboxes did not belong to him. No expert was offered by the State to contradict Weatherspoon's testimony. If the State had produced an expert at trial to substantiate the claims of Officer Wyman, then the denial of an expert in support of the defendant's testimony would require close examination. However, Weatherspoon enjoyed full cross-examination of the State witness and adequately rebutted Officer Wyman's testimony. Weatherspoon's problem was credibility, not accessibility to expert assistance. No

judicial abuse of discretion occurred in this trial.

¶9. Broad discretion concerning a decision whether or not to furnish funds to employ experts should remain with the trial court. Under the facts in this case, we cannot fault the trial court determination that an expert witness to analyze fingerprints was not necessary to the defense.

## II.

## THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTION TO TAKE A POLYGRAPH TEST, TO PROVIDE FUNDS THEREFORE AND TO REQUIRE THE ARRESTING OFFICER TO SUBMIT TO A POLYGRAPH TEST.

¶10. Weatherspoon advances the argument that the trial court erred when it denied his motion to take a polygraph test at the State's expense and require the arresting officer to take one as well. Once again Weatherspoon cites to *Ake v. Oklahoma,* 470 U.S. 68, 76 (1985) in support of his argument that the State must insure that the defendant has a meaningful chance to present his defense which he argues includes providing the funds for a polygraph test. As explained earlier what the State must provide in assisting a defendant in the presentation of his defense is left to the sound discretion of the trial court on a case by case basis.

¶11. The State correctly contends that even if Weatherspoon had taken a polygraph test, the results of the test would not have been admissible into evidence. "It is well settled that neither the fact of the taking of a polygraph examination or the results of such an examination are admissible into evidence." *Carr v. State*, 655 So. 2d 824, 836 (Miss. 1995) (Roberts, J.) (*quoting Garrett v. State*, 549 So. 2d 1325, 1330 (Miss. 1989)); *see also Miskelley v. State*, 480 So. 2d 1104, 1108 (Miss. 1985); *Pennington v. State*, 437 So. 2d 37, 40 (Miss. 1983). It follows that since this type of evidence is inadmissible, the trial court did not abuse its discretion in denying Weatherspoon's request to take such a test at the public's expense or to require the arresting officer to take one. Therefore, we find that Weatherspoon was not denied due process by the proper denial of this motion by the lower court.

## III.

## THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT THE RIGHT TO TESTIFY THAT HE HAD VOLUNTEERED TO TAKE A POLYGRAPH TEST CONCERNING THE INDICTMENT AFTER THE STATE ATTACKED HIS CREDIBILITY DURING CROSS-EXAMINATION.

¶12. Weatherspoon relies on *Conner v. State*, for the contention that the State is allowed to testify to the willingness of one of its witnesses to take a polygraph test in order to bolster the testimony of its star witness. *Conner v. State*, 632 So. 2d 1239, 1257-58 (Miss. 1993). In *Conner*, this Court did not find reversible error when the trial court permitted the prosecution to introduce evidence concerning the willingness of a witness for the State to take a lie detector test. *Id.* at 1259. This Court held that the trial court did not abuse its discretion when it allowed the testimony in order to rehabilitate an impeached witness. *Id.* at 1259. In addition, although not cited by either party, in *Lester v. State*, this Court stated, "However, in *Conner*, this Court stated that evidence of an offer to take a polygraph is only admissible to support the credibility of a witness whose veracity has previously been attacked." *Lester v. State*, 692 So.

2d 755, 787 (Miss. 1997) (*citing **Conner v. State***, 632 So. 2d 1239, 1258 (Miss. 1993)). Recently, in ***Manning v. State***, No. 95-DP-00066-SCT, 1998 WL 334719 (Miss. June 25, 1998), relying on the ***Conner*** decision, this Court held that the testimony of State's witness Earl Jordan that he had volunteered to take a polygraph examination "was proper redirect after Jordan's credibility had been attacked on cross-examination by the defense." ***Manning***, 1998 WL 334719, at \*22.

¶13. Upon careful consideration and further review, we find that testimony pertaining to a witness's offer to take a polygraph, whether it be a witness for the State or the defense, is not admissible at trial. To the extent that this holding affects ***Conner v. State***, ***Lester v. State***, and ***Manning v. State***, cited *supra*, those cases are overruled. The record reflects that there was a bench conference where defense counsel acknowledged that he was about to get into testimony that would disclose that the defendant had offered to take a polygraph test to shore up his position, the motion was made in a timely manner and was overruled finding that the proffered testimony would not be proper evidence in this case. We agree it is not proper evidence.

¶14. In ***Carr v. State***, we quoted an earlier opinion by this Court that addressed the reasoning behind the rule that forbids the admission of polygraph results. We stated:

> It is well settled that neither the fact of the taking of a polygraph examination or the results of such an examination are admissible into evidence. The supporting argument for inadmissibility is the idea that it is relevant to establish neither consciousness of guilt, nor an attitude of innocence. *If the fact that an accused volunteered to subject himself to polygraph testing is revealed, it may be self serving and destroy any value motivation, particularly if the accused knows that the test results are inadmissible. However, to permit a jury to hear that the accused voluntarily submitted to a polygraph test, without giving the results, may also work a prejudice to the accused.* The jury most likely would draw unwarranted inferences as the guilt or innocence of the defendant. Thus, the rule of inadmissibility has valid supporting analysis.

***Carr***, 655 So. 2d at 836 (*quoting **Garrett v. State***, 549 So. 2d 1325, 1330 (Miss. 1989) (emphasis added)). We find this reasoning to be persuasive not only with respect to the accused but also to all witnesses testifying on behalf of either the State or the defendant. In a case where testimony at trial was admitted that revealed that the prosecution's key witness had voluntarily submitted to a lie detector test, this Court stated:

> The successful attempt by the prosecution by the means employed to implant in the minds of the jury the impression that because the witness had voluntarily submitted to a lie detector test prior to trial he must perforce be testifying truthfully in the course of the trial, resulted, in effect, in the substitution of a mechanical device, without fair opportunity for cross-examination, for the time-tested, time-tried, and time-honored discretion of the judgment of a jury as to matters of credibility.

***Mattox v. State***, 240 Miss. 544, 561, 128 So. 2d 368, 373 (1961). Our holding today is in line with previous decisions by this Court. *See **Mattox v. State***, 240 Miss. at 555-62, 128 So. 2d. at 368-74 (holding that "neither the taking of a lie detector test nor the result thereof should be admitted in evidence"); ***Thomas v. State***, 426 So. 2d 795, 795-96 (Miss. 1983) (warning not to allow testimony that defendant took polygraph test on retrial); ***Harrison v. State***, 307 So. 2d 557, 562 (Miss. 1975) (reaffirming holding that "neither the taking of a lie detector test nor the result thereof is admissible as evidence").

¶15. Our holding today does not mean that every time evidence pertaining to a witness's offer to take a polygraph test or the mention of the witness's refusal to take one is inadvertently admitted at trial reversal is automatically required. "When, however, the rule as to admission is violated, the courts have generally looked to the nature of the error and the circumstances attendant to its disclosure." *Garrett*, 549 So. 2d at 1330. For example, several cases have not been reversed based on inadmissible evidence regarding the offer to take a polygraph, or the refusal to take a polygraph, or that a witness passed a polygraph test. *See Pittman v. State*, 236 Miss. 592, 111 So.2d 415 (1959) (unsolicited response by witness regarding defendant being held in jail to take a polygraph was not reversible error where the results were not disclosed to the jury, the trial judge held that the evidence was not relevant, the motion for mistrial was not timely, and the error could not have prejudiced the defendant); *Stringer v. State*, 454 So. 2d 468 (Miss. 1984) (holding that the mere mention of the failure to submit to polygraph testing could not be reversible when compared to the other evidence placed before the jury and the fact that defendant did not object to the admission of the evidence); *Garrett,* 549 So. 2d at 1328-31 (finding that the inadvertent disclosure to the jury of a release signed by defendant stating that he had agreed to take a polygraph test did not unduly influence the jury, "although error, it was not prejudicial requiring reversal under the facts and circumstances of this case"); *Pennington*, 437 So. 2d at 39-40 (holding that innuendo that prosecution witness passed polygraph test does not require reversal since the defense failed to timely object). Whether or not the admission of this type of inadmissible evidence requires reversal necessarily requires a case by case analysis. However, it should be made clear that any evidence pertaining to a witness's offer to take a polygraph, refusal to take a polygraph test, the fact that a witness took a polygraph test or the results of a polygraph test is inadmissible at trial by the State or by the defense.

PART TWO

**WALLER, JUSTICE, FOR THE COURT:**

IV.

**THE STATE COMMITTED REVERSIBLE ERROR DURING ITS CLOSING ARGUMENT BY MAKING A CHALLENGE TO DEFENSE COUNSEL AND BY APPEALING TO THE BIAS AND PREJUDICE OF THE JURORS.**

¶16. Weatherspoon contends that the following remarks made by the State during closing argument were improper, because they merely appealed to the bias and prejudice of the jury:

> And its my job and what I'm doing here today is asking you to point the finger at this man and say, hey, buddy, what are you doing on our streets with this crack cocaine in your pocket: Ask some questions of him. What are you doing with this in your pocket?

> I see it everyday. I see it every drug trial we have. They walk through that door, sit at that table, and ask you to let them walk out of here. They have the gall to do it. And I have the gall to ask you to find them guilty for what they're doing wrong.

> You see, I see - - also see this everyday. *You see that rock? That's a murder. You see that rock? That's a burglary. You see that rock? That's a rape. You see that rock? That's a kid born on crack cocaine.*

Mr. Flood: We're going to object to this, Your Honor. We're going to object to that part of the argument.

The Court: Sustained.

Weatherspoon failed to move for a mistrial or request that the judge admonish the jury to disregard the comments. The dissent is correct in noting that an order to disregard would have cured any possible prejudice. However, it is incumbent upon counsel to move for a mistrial or ask for an admonishment. *See Johnson v. State*, 477 So.2d 196, 210 (Miss. 1985). For whatever reason, Weatherspoon did not take this next step. We will not reverse the trial court based upon something that it was not asked to do.

¶17. On appeal to this Court, Weatherspoon also objects to the following remarks made by the State during its rebuttal closing argument:

Mr. Savant: You heard that allegations of wrongdoing, and I ask you to look back at the police officers who testified here today. I ask you to look back at the lady from the Crime Lab who testified here today. There was no wrongdoing in this case. I've been accused of wrongdoing, the State of Mississippi has. *Mr. Flood and I will take that up after court*.

Again, again, if you want Tommie Weatherspoon on the streets of Madison County, Mississippi, possessing this poison, find him not guilty. *I don't think you want that.* I'm asking you to find him guilty. This is poison. He's guilty of possessing it. He's broken the law. *Don't allow him to walk into this courtroom and lie to you and tell you untruth after untruth.*

Police officers have no reason to lie. Monica Artis has no reason to lie. *I have no reason to lie. And we have not lied to you today.* The evidence is before you. Find him guilty.

¶18. Weatherspoon asserts that the State made inappropriate remarks in this portion of closing argument by improperly challenging defendant's counsel, expressing a personal opinion, and vouching for its own truthfulness. The State correctly argues that none of these comments made in the final summation were contemporaneously objected to. As a result, we find that this issue is procedurally barred from review. *Johnson v. State*, 477 So. 2d 196, 209-10 (Miss. 1985); *Ratliff v. State*, 313 So. 2d 386, 388 (Miss. 1975).

## V.

### THE CUMULATIVE EFFECT OF THE ABOVE ERRORS DENIED THE DEFENDANT A FUNDAMENTALLY FAIR TRIAL.

¶19. Weatherspoon asks this Court to reverse his conviction based upon the combined effect of all of the alleged errors at his trial, even if we find that no individual error requires reversal in this case.

This Court may reverse a conviction and sentence based upon the cumulative effect of errors that independently would not require reversal. *Jenkins v. State*, 607 So.2d 1171, 1183-84 (Miss. 1992); *Hansen v. State*, 592 So.2d 114, 153 (Miss. 1991). However, where "there was no reversible error in any part, so there is no reversible error to the whole."

*Coleman v. State*, 697 So.2d 777, 787 (Miss. 1997) (*quoting McFee v. State*, 511 So.2d 130, 136

(Miss. 1987)). Because we find no merit in any of Weatherspoon's assignments of error, we refuse to reverse his conviction based upon cumulative error.

**¶20. CONVICTION OF POSSESSION OF COCAINE AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS TOGETHER WITH THE PAYMENT OF ALL COURT COSTS AND FEES AFFIRMED. APPELLANT IS GIVEN CREDIT FOR JAIL TIME SERVED.**

**PART ONE: ASSIGNMENTS OF ERROR I, II AND III: SULLIVAN, P.J., PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, ROBERTS, MILLS AND WALLER, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**PART TWO: ASSIGNMENTS OF ERROR IV AND V: WALLER, J., PRATHER, C.J., PITTMAN, P.J., ROBERTS, SMITH AND MILLS, JJ., CONCUR. SULLIVAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS AND McRAE, JJ.**

**SULLIVAN, PRESIDING JUSTICE, DISSENTING AS TO PART TWO:**

¶21. I disagree with the majority's conclusion that Weatherspoon is procedurally barred from raising as error the State's improper comments during closing argument. The record reveals that his assertions on this issue have merit, and I must therefore respectfully dissent.

¶22. During closing argument, the prosecutor equated the rocks of crack cocaine to other crimes, such as murder, rape, and burglary. The prosecutor's comments were a blatant attempt to inflame the jury. The State argues that since Weatherspoon's objection to the prosecutor's comments equating each rock of cocaine was sustained, it fails to see the damage that Weatherspoon endured. Although the State is correct that the objection was sustained by the trial court, the court failed to admonish the jury to disregard the improper comments and avert any possible prejudice. *See Alexander v. State*, 520 So. 2d 127, 131 (Miss. 1988); *McFee v. State*, 511 So. 2d 130, 135 (Miss. 1987) (holding no error when the trial judge sustains an objection and instructs the jury to disregard the improper comment).

¶23. The State also argues that the use of the cocaine on the street as the cause of other possible crimes would have been a reasonable inference that could have been argued from the evidence. I disagree. Whether there is error based on improper prosecutorial comments must be determined from the facts and circumstances of the particular case. *Ladner v. State*, 584 So. 2d 743, 754 (Miss. 1991) (*citing Peterson v. State*, 357 So. 2d 113, 117 (Miss. 1978)). The test used by this Court to determine if improper remarks by a prosecutor requires reversal is this: "'. . .whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created.'" *Ormond v. State*, 599 So. 2d 951, 961 (Miss. 1992) (*quoting Davis v. State*, 530 So. 2d 694, 701 (Miss. 1988)). There is little doubt that the above quoted language was designed to elicit passion from the jury and create prejudice against Weatherspoon by stating that each rock found in the matchbox represents a totally different crime. Particularly since the case rested completely on whom the jury believed, the improper comment that each rock represented a violent

crime may have resulted in a decision that was influenced by this improper comment. It was improper for the district attorney to inject other possible crimes into the closing argument.

¶24. I also disagree with the majority's conclusion that Weatherspoon's failure to object to the prosecutor's improper vouching and challenge to defense counsel bars consideration of this issue on appeal. This Court has stated, "A trial error, however, involving violation of a Constitutional right may reach such serious dimension, however, that this Court is required to address it, though first raised on appeal." *Whigham v. State*, 611 So. 2d 988, 995 (Miss. 1992) (*citing **Brooks v. State***, 209 Miss. 150, 46 So. 2d 94, 97 (1950)). There is no question that a defendant has a fundamental right to a fair trial. When various errors may create a bias, prejudice and passion that denies this constitutional right then reversal is required.

¶25. Although the outcome of the trial without the improper comments having been made may have been the same, we should not affirm this conviction on mere speculation. The following language found in *Griffin v. State* bears repeating:

> . . .any person charged with a crime, under the Constitution of this State, is entitled to be tried in a proceeding which is conducted by the prosecutor with dignity and propriety, free from name-calling, gratuitous insult and unnecessary inflammatory comment, repeated expressions of outrage, *frequently recurring and transparent appeals to the emotions of jurors*, and other such unacceptable conduct which this Court has repeatedly condemned. This Court cannot close its eyes to prosecutorial misconduct, condone it when it occurs, nor tolerate further recurrence.
>
> In the front ranks of those who insist upon compliance with the law should always be found the attorneys whose duty it is to prosecute those who violate the law. When these officers fail to follow the law, the whole plan for the administration of justice fails. *It is difficult if not impossible for a trial judge to assure an orderly fair trial without the cooperation of the prosecutor, and errors occur which this Court cannot ignore. Cases must then be reversed and sent back for a new trial, and this is true without regard to whether the accused is guilty or innocent. . . .*
>
> . . . .
>
> Rule 5.01 and Rule 5.12 of the Uniform Criminal Rules of Circuit Court Practice require that *the attorneys for the state, as well as defense counsel, conduct themselves with dignity and decorum, treating the court, counsel, witnesses, and even the defendant, with professional respect.* The prosecuting attorneys did not so conduct themselves in the trial of this case. The trial court is reminded that the rules require that no conduct interfering with or obstructing the administration of justice shall be tolerated. When prosecutorial misconduct in the courtroom requires the reversal of a case, that rule has been violated.

*Griffin v. State*, 557 So. 2d 542, 553 (Miss. 1990) (emphasis added). Several of the comments made by the district attorney in the State's closing argument were improper. It cannot be said with any certainty that these comments were harmless or that they did not in fact deny Weatherspoon of his fundamental right to a fair trial. Based on the foregoing analysis, I would reverse the conviction and remand for a new trial based on this assignment of error.

**BANKS AND McRAE, JJ., JOIN THIS OPINION.**

**SMITH, JUSTICE, DISSENTING:**

¶26. The majority holds "that testimony pertaining to a witness's offer to take a polygraph, whether it be a witness for the State or the defense, is not admissible at trial." Majority Opinion at 8. In so doing, the majority returns the law in Mississippi to its pre-*Conner* state. In *Conner v. State*, this Court held:

> M.R.E. 608(b) states that once a witness's integrity has been impugned,
>
> [s]pecific instances of the conduct of a witness, for the purpose of ... supporting his credibility, ... may ... in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
>
> The second exception found in Rule 608(b) would applies [sic] in the instant case. When Detective Brown testified about Stevens' agreement to take a polygraph exam, the defense had already launched an attack on Stevens' credibility. Further, Detective Brown was in the midst of testifying about the means by which the police had sought to verify the truth of Stevens' statement. The only question remaining is whether an agreement to submit to a lie detector test is "probative of truthfulness or untruthfulness." While the reliability of lie detector results is subject to debate, it is probably true that a person's willingness to submit to such a test, particularly where he has little to lose by not taking it, tends to indicate that the person believes he is telling the truth. **The person's subjective response to the prospect of polygraphic examination, regardless of whether he takes one, amounts to a specific instance of conduct which is probative on the issue of truthfulness.**
>
> Although this Court has never explicitly held that references to polygraph tests are admissible when used to rehabilitate an impeached witness, the Court did find in *Pittman v. State*, 236 Miss. 592, 111 So.2d 415 (1959), that a reference to such a test on redirect examination, where the results of the test were not disclosed, did not amount to reversible error. *See Pittman*, 236 Miss. at 597-98, 111 So.2d at 417.

*Conner v. State*, 632 So.2d 1239, 1259 (Miss. 1993) (emphasis added). *Conner* is not a blanket endorsement of allowing polygraphs as evidence but rather only allows such on a narrow limited basis to rehabilitation of an impeached witness. I can see no reason why this Court should sound the retreat from the *Conner* position.

¶27. Thus, I must agree with Weatherspoon's argument that fundamental fairness requires that the defense have the same opportunity as the State to rehabilitate an impeached witness's testimony by showing that said witness was willing to take a polygraph test. In *Conner*, the witness being rehabilitated was the State's. Here, the issue turns as Weatherspoon wants to rehabilitate his own testimony which the State has attacked. Nothing in *Conner* specifically limits reference to the witness's willingness to take a polygraph test to a State's witness nor should it.

¶28. Furthermore, in *Lester v. State*, this Court said in reference to *Conner* "that evidence of an offer to take a polygraph is only admissible to support the credibility of a witness whose veracity has previously

been attacked." *Lester v. State*, 692 So.2d 755, 787 (Miss. 1997). Weatherspoon's credibility was attacked by the State. I can see no reason why the defense should not be allowed to put on evidence that Weatherspoon was willing to take a polygraph test to rehabilitate his testimony when this Court has allowed the State to do so.

¶29. In *Manning v. State*, the issue arose again in regards to the impeachment of a witness for the State, and relying on *Conner,* this Court said:

> In the case before us, the prosecutor made no attempt to disclose to the jury whether a test was actually taken or what the results of the test were. He only elicited that Jordan [a jailhouse snitch] had volunteered to take one. This was proper redirect after Jordan's credibility had been attacked on cross-examination by the defense.

*Manning v. State*, No. 95-DP-00066-SCT, 1998 WL 334719, at *22 (Miss. June 25, 1998). Again, nothing in the rationale would preclude this Court from ruling that Weatherspoon should be allowed the same opportunity to rehabilitate his own attacked credibility by showing evidence of a willingness to take a polygraph test. In fact, fundamental fairness would require this Court to grant the defense the same opportunity as has previously been granted to the State. The trial judges in each of the above cases properly followed and applied *Conner*. The trial bench and bar should be able to rely upon this Court for consistency in our opinions and not make radical departures from precedent within a relative short time. *State ex rel. Moore v. Molpus*, 578 So.2d 624, 638 (Miss. 1991); *Roberts v. Grafe Auto Co., Inc.*, 653 So.2d 250 (Miss. 1994) (Prather, P.J., dissenting opinion). By retreating from the *Conner* dictates the majority has set the stage for the ultimate reversal of three death penalty convictions previously upheld by this Court.

¶30. Therefore, I would continue to adhere to *Conner* and its progeny and hold that a person's subjective response to the prospect of polygraphic examination, regardless of whether he takes one, amounts to a specific instance of conduct which is probative on the issue of truthfulness, irregardless of whether that person is a witness for the State or the defense. Once a witness's integrity has been impugned, evidence that a witness was willing to take a polygraph should be admissible for the limited purpose of rehabilitating the impeached witness.

¶31. I respectfully dissent.

### MILLS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶32. I concur in part with the majority opinion. However, I dissent as to Issue IV and would alternatively affirm the lower court.

### THE CLOSING ARGUMENT IN THIS CASE DID NOT CONSTITUTE REVERSIBLE ERROR

¶33. The majority opinion finds the following language by the district attorney impermissible:

> You see that rock? That's a murder.

> You see that rock? That's a burglary.

You see that rock? That's a rape.

You see that rock? That's a kid born on crack cocaine.

¶34. The defense timely objected to the above language and the trial court sustained the objection, but failed to admonish the jury to disregard these comments. Nevertheless, even assuming these comments were improper, they did not likely influence the outcome of the trial.

¶35. We should be hesitant to reverse a conviction on mere speculation. Significant proof existed in the record to support the conviction of the defendant. The closing comments of the district attorney were not sufficiently untoward to support a reversal of this case. I therefore respectfully dissent from the majority decision to reverse this case.

**ROBERTS, J., JOINS THIS OPINION. SMITH, J., JOINS IN PART.**