PAYNE, J., for the Court:
PROCEDURAL POSTURE AND ISSUE PRESENTED
¶ 1. This case is before the Court challenging the judgment of DeSoto County Circuit Court of conviction of one count of aggravated assault and sentence of thirty years, with eight years suspended, in the custody of the Mississippi Department of Corrections. After his motion for JNOV was overruled, Nelson timely perfected this appeal raising the following issue:
WHETHER THE TRIAL COURT ERRED IN DENYING NELSON’S MOTION FOR A CONTINUANCE BECAUSE OF THE POTENTIAL OF A MENTAL IMPAIRMENT SUFFERED BY NELSON THAT ALLEGEDLY AFFECTED HIS ABILITY TO REASON EFFECTIVELY, TO COMPREHEND THE PROCEEDINGS, AND TO PARTICIPATE IN HIS DEFENSE
*390 After reviewing the record, we find this assignment of error is not well taken. Accordingly, we overrule the same and affirm the conviction and sentence in this case.
FACTS
¶ 2. Sometime during the night of April 3, 1997, Aaron Nelson escaped from the Mississippi Department of Corrections’ Community Work Center located in Quit-man County, Mississippi. Approximately two months after his escape, law enforcement authorities received information that Nelson would be at a medical facility in Southaven, Mississippi in DeSoto County. Based on this information, authorities from several different law enforcement agencies gathered near the location to plan for Nelson’s re-capture and return to MDOC custody.
¶ 3. The information received by the authorities proved correct. With officers poised near the identified medical facility, Nelson arrived there to pick up his girlfriend, Tina Hawkins. After Hawkins got into Nelson’s vehicle, law enforcement personnel converged upon Nelson and Hawkins. According to testimony at trial, one police vehicle, driven by Officer Nat Baker of the Southaven Police Department, cut off Nelson’s escape route. According to Baker, Nelson accelerated his vehicle and struck Baker’s vehicle in the driver’s door. Nelson then jumped his vehicle over the curb onto the grass median and struck Baker’s car again. The two vehicles then ran side by side, continually bumping each other, until Baker finally maneuvered his patrol vehicle in a manner that pinned Nelson’s vehicle between Baker’s patrol car and the air-conditioning unit of a nearby building, ending the pursuit. Nelson then exited the vehicle and fled the scene.
¶4. Nelson testified on his own behalf. Nelson maintains that he was returning from a trip to Memphis and had stopped by the medical facility to pick up Tina Hawkins from work. Nelson maintains that once Hawkins got in the vehicle, he “took off’ because he saw someone coming toward him with a gun. As he left, Nelson said that a vehicle cut him off and forced him into the building’s air-conditioning unit. Nelson maintains he never saw any blue lights or other identifying marks that would have alerted him to the police’s presence. He admitted that he was aware that the authorities would be looking for him though he did not expect them to be in Southaven. Nelson says he never intentionally struck Baker’s patrol unit that blocked his passageway but only made contact with that vehicle after that vehicle struck his car. Nelson testified that he was never notified that the persons in pursuit of him were police officers.
¶ 5. Following the alleged aggravated assault, Nelson was captured and returned to the custody of correctional authorities. Nelson was indicted by a DeSoto County Grand Jury of one count of aggravated assault on Officer Baker. On the morning of his trial, Nelson’s trial counsel, based on information provided by Nelson’s mother, requested a continuance of this matter for the purposes of obtaining information on Nelson’s mental health. According to Nelson’s mother, Nelson was being treated for schizophrenia. When quizzed about his mental health treatment, Nelson confirmed that he had received such treatment in Tennessee, but he did not confirm what he had been treated for.
¶ 6. The trial court, after consulting with Nelson, determined that he was competent to stand trial and denied the request for a continuance. After a jury trial, Nelson was convicted and sentenced to serve a term of thirty years in the custody of the MDOC with eight years suspended. This appeal followed.
ANALYSIS AND DISCUSSION
¶ 7. As his only assignment of error, Nelson maintains that the trial court erred in not granting his attorney’s request for a continuance on the morning of trial in order for an evaluation of his mental health and his competency to stand trial. Nelson cites Howard v. State, 701 *391 So.2d 274, 280 (Miss.1997) for the proposition that the trial court has an affirmative duty to prevent the trial of an incompetent defendant and Pate v. Robinson, 388 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) in support of the argument that the trial of an incompetent defendant violates standards of due process and fundamental fairness. While Nelson’s citations of authority are accurate, our review of the record leads us to conclude that the trial judge acted appropriately in denying Nelson a continuance in this case. Accordingly, the assignment of error is overruled.
¶ 8. In Conner v. State, 632 So.2d 1239, 1248 (Miss.1993) (overruled in part on other grounds by Weatherspoon v. State, 732 So.2d 158 (Miss.1999)), the Mississippi Supreme Court addressed the issue of the trial court’s responsibility to hold a competency hearing. The ultimate question is whether there are evident reasonable grounds that the trial judge believes the defendant may be insane; if so, the trial court must hold a competency hearing. Id. “The determination of what is ‘reasonable,’ of course, rests largely within the discretion of the trial judge. He sees the evidence first hand; he observes the demeanor and behavior of the defendant.” Id. As this Court has recently noted, “the defendant has the burden to persuade the trial judge that the evidence warrants the need for a mental examination.” Benish v. State, 733 So.2d 855, 856 (Miss.Ct.App.1999). “When the trial court has made a finding that the evidence does not show a probability that the defendant is incapable of making a rational defense, the Court will not overturn that finding unless the finding was manifestly against the overwhelming weight of the evidence.” Id. (citing Dunn v. State, 693 So.2d 1333, 1341 (Miss.1997)) (other citation omitted).
¶ 9. In the case sub judice, Nelson’s counsel, Craig Treadway, following voir dire, addressed the trial judge regarding Nelson’s competency to stand trial:
By Mr. Treadway: The other motion, I don’t know quite how to handle this. The Defendant’s mother is in the crowd, and she just spoke with me, and she says that Mr. Nelson is being treated in prison and I haven’t seen any evidence or anything for schizophrenia, and there’s no indication in the file and Mr. Nelson has not told me anything about it. When I asked him had he been treated for a mental disorder, he said yes, and I don’t have the records. I don’t have anything. So I suppose I’m asking for a continuance to check into this. We can bring — I suppose we can bring his mother in here and see if she knows anything about it. I don’t -
By the Court: Well, first, I’m going to deny the motion. First, I don’t think it’s timely. Secondly, Mr. Nelson has been through this system many, many, many times, and it’s never been a problem before. There’s not been a determination by any court that he’s not competent.
After this colloquy with defense counsel, the trial court then quizzed Nelson about his mental illness. Nelson could not tell the trial judge for what mental disorder he was being treated, but only that he had received treatment while in jail in Tennessee on unrelated charges to the instant aggravated assault case. Nelson admitted that he had not received any treatment for his alleged mental illness during his incarceration with the MDOC.
¶ 10. After determining that Nelson had not received any treatment for a mental disorder while in the custody of Mississippi authorities, the trial judge then conducted a thorough discussion with Nelson in an effort to ascertain Nelson’s comprehension of the proceedings in this case. During this dialogue, Nelson indicated that he understood the charges against him, that he understood the proceedings he was facing that day, that he had rejected a plea offer from the prosecution because he wanted a trial, that he had consulted with his attorney about his case and assisted him in preparing for trial, and that he, if convict *392 ed on the charge, faced more time of incarceration.
¶ 11. Based on Nelson’s verbal assurances to the judge regarding his grasp and understanding of the proceedings, the trial judge conducted a discussion with the prosecutors, Michael Horan and John Champion, and Mr. Treadway:
By Mr. Treadway: His mother had given me the name of the doctor; but like I said, she gave it to me after we had done the voir dire. So I don’t know if he’s a real doctor. I haven’t tried to call him or anything. So I don’t know if there is any records or what.
By Mr. Champion: I’ve got a witness that’s going to be here at 10:00 o’clock from Jackson.
By Mr. Horan: My only suggestion would be just to go forward and do— maybe Do a presentence report on him if the Court wishes and handle it that route.
By Mr. Treadway: Do you want to bring his mother? She said she knew the doctor’s name.
By the Court: No. I don’t think it’s timely. I think he’s got — he’s obviously experienced in court. He’s been through — well, we know he’s got two convictions in Mississippi. He’s admitted to some in Tennessee. He’s very experienced with the legal system, says he’s communicated with you about the trial, preparation for the trial. Do you dispute that?
By Mr. Treadway: No, I don’t dispute that.
By the Court: So I think he’s able to prepare and assist in his defense here. So we’re just going to go forward at this point.
Following this discussion, the trial judge empaneled the jury and began the trial.
¶ 12. Based on the record before us, we cannot say that the trial judge’s decision was manifestly against the overwhelming weight of the evidence. Nelson’s responses to the trial judge’s inquiries about his understanding of the charges against him as well as the proceedings he was to face that day demonstrated that Nelson understood the charges and the proceedings and was able to actively participate in his defense. There existed no reasonable basis for the trial court to believe that Nelson was insane, incompetent, or otherwise unable to understand the charges and proceedings in his case. Accordingly, the conviction and sentence are affirmed.
¶ 13. THE JUDGMENT OF THE DE-SOTO COUNTY CIRCUIT COURT OF CONVICTION OF ONE COUNT OF AGGRAVATED ASSAULT UPON A POLICE OFFICER AND SENTENCE OF THIRTY YEARS, WITH EIGHT YEARS SUSPENDED, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED AGAINST DE-SOTO COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, AND THOMAS, JJ., CONCUR.