LEE, J.,
for the court.
PROCEDURAL HISTORY AND FACTS
¶ 1. In the early morning hours of February 25, 2000, Officers Tim Gandy and Patrick Ervin of the Scott County Sheriffs Department were on patrol when they stopped by a Chevron Service Station in Forest. The officers noticed two teenaged girls inside and asked the girls why they were there at such a late hour. The girls responded they were waiting for their “father,” Earl Stagg. Shortly thereafter, Stagg pulled into the station in a pick-up truck, and Officer Gandy went out to question Stagg about the girls. At some point thereafter, Officer Gandy turned around to find Stagg feverishly trying to stuff a paper towel into one of the tie-down holes on his truck. Officer Gandy noticed a baggy hanging from under the towel which appeared to contain drugs, and upon retrieving the baggy, he also found, in plain view, a loaded pistol sitting on the front seat of the truck. At trial, Stagg claimed Officer Gandy’s entire recollection of events was false, and he argued the officers threatened him and had planted the baggy of contraband.
¶ 2. Stagg was indicted for unlawful possession of methamphetamine while in possession of a firearm. A Scott County jury convicted him on this charge, and he was sentenced to serve ten years in the custody of the Mississippi Department of Corrections, plus ordered to pay a $8,000 fine and pay costs of court. Stagg’s motion for new trial was denied, and he appeals to this Court raising the following issues: (1) Did the court err in refusing to allow the appellant to comment on his willingness to take a polygraph test; (2) in refusing the appellant’s jury instruction D-2; and (3) in denying the appellant’s motion to suppress? We review each of these issues and find no merit; thus, we affirm.
DISCUSSION OF THE ISSUES
I. DID THE COURT ERR IN REFUSING TO ALLOW THE APPELLANT TO COMMENT IN CLOSING ARGUMENTS ON HIS WILLINGNESS TO TAKE A POLYGRAPH TEST?
¶ 3. With his first issue, Stagg argues that the court erred in granting the State’s motion in limine to force Stagg to refrain from mentioning during the closing argument Stagg’s offer to take a polygraph test. On direct examination, Stagg testified that the first time he had seen the baggy was when Officer Gandy showed it to him, and he stated he would take a polygraph to that statement. No objection *381 was made. On cross-examination, after the prosecutor questioned Stagg concerning whether the drugs were his, the prosecutor asked Stagg whether he would be willing to take a polygraph, to which Stagg replied he would. No objection was made. Later when the attorneys were in chambers discussing jury instructions with the judge, the prosecutor asked the judge to not allow the defense to remind the jury in closing arguments that Stagg had offered to take a polygraph test, since such tests were inadmissible. The judge made the following decision:
It is in evidence and I was concerned that at the point it was — it first surfaced that an objection was not made. And then I became even more concerned when the counsel for the defendant asked the question. Then it surfaced or was nearly going to surface for the third time when Mr. Gandy was on rebuttal. And the question was almost asked of him and we went into chambers. And the question was going to be, would you be willing to take a polygraph test? I think that all of it would be highly prejudicial. And so, that not being the law in the State of Mississippi notwithstanding the fact that it is before the jury, which I regret and which I had entertained the idea of giving a jury — a Court’s jury instruction to instruct the jury that is not the law. But have moved away from that. Having said all, the motion in limine is well taken and is sustained. Meaning that the defendant will not be allowed to refer to the polygraph in closing argument.
¶ 4. Stagg cites Conner v. State, 632 So.2d 1239 (Miss.1993), for authority. Conner, however, was overturned by Weatherspoon v. State, 732 So.2d 158 (Miss.1999), which stated:
Upon careful consideration and further review, we find that testimony pertaining to a witness’s offer to take a polygraph, whether it be a witness for the State or the defense, is not admissible at trial....
Our holding today does not mean that every time evidence pertaining to a witness’s offer to take a polygraph test or the mention of the witness’s refusal to take one is inadvertently admitted at trial reversal is automatically required. “When, however, the rule as to admission is violated, the courts have generally looked to the nature of the error and the circumstances attendant to its disclosure.”
Id. at (¶¶ 13, 15).
¶ 5. We review the nature and circumstances surrounding disclosure of Stagg’s profession of willingness to submit to a polygraph and find that the judge acted prudently in declining to allow this improper evidence to further be presented to the jury in closing argument. Although, as the judge noted, objections were in order at the time the willingness to take a polygraph was mentioned, we cannot hold the judge in error for preventing further error from occurring were the evidence to have been presented to the jury once again. Therefore, we cannot find the trial court abused its discretion in granting the State’s motion, and this issue is without merit.
II. DID THE COURT ERR IN REFUSING THE APPELLANT’S JURY INSTRUCTION D-2?
¶ 6. Stagg next argues the trial court erred in refusing to allow a jury instruction, and we look to our standard of review: “In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” Mitchell v. *382 State, 788 So.2d 853(¶ 6) (Miss.Ct.App.2001). The jury instruction at issue states:
The Court instructs the jury that it is as much the sworn duty of the jurors to acquit the innocent as it is to convict the guilty; and under the law of the State of Mississippi, all persons are presumed innocent until proven guilty so conclusively as to remove reasonable doubt. Furthermore, the Court instructs you, the Jury, that the doctrine of reasonable doubt is just as much the law as any other constitutional or legal principal; and if, in the minds of the jury, such reasonable doubt of the defendant’s guilt exists in the cause arising out of the believable evidence, or from lack of evidence, the Court instructs and directs you to acquit Earl Stagg, Jr.
Stagg claims this instruction is basic constitutional law under the Due Process Clause of the Fourteenth Amendment, and argues he is entitled to this instruction on the presumption of innocence theory and on the reasonable doubt theory.
¶ 7. Concerning Stagg’s claim that his rights were violated since the “presumed innocence” phrase was not put before the jury in his requested instruction, the Mississippi Supreme Court has stated:
In Kentucky v. Whorton, 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 ... (1979), the Court was considering the failure of the trial court to give an instruction on the presumption of innocence which the Supreme Court of Kentucky considered to be constitutionally indispensable in a criminal trial. The United States Supreme Court, however, said in reversing the case, [“] short, the failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution.... [S]uch a failure must be evaluated in light of the totality of the circumstances including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors to determine whether the defendant received a constitutionally fair trial.[”]
Nettles v. State, 380 So.2d 246, 247 (Miss.1980). Looking to the totality of the circumstances, including a review of the other instructions in this case as well as the weight of the evidence, we find the judge did not err in refusing the portion of this instruction concerning presumption of innocence as all indications are that Stagg received a fair trial.
¶ 8. The latter portion of the instruction concerns reasonable doubt. The supreme court has said that an instruction concerning the definition of reasonable doubt is not necessary because the phrase defines itself. See Isaacks v. State, 337 So.2d 928, 930 (Miss.1976); Boutwell v. State, 165 Miss. 16, 30, 143 So. 479, 483 (1932). We also note that the doctrine of reasonable doubt was put before the jury in several other instructions. Accordingly, we find no merit to Stagg’s argument on this issue.
III. DID THE COURT ERR IN DENYING THE APPELLANT’S MOTION TO SUPPRESS?
¶ 9. Stagg finally argues that the court erred in denying his motion to suppress the results of the search. Specifically, Stagg takes issue with Officer Gandy’s testimony of what happened on the night in question and argues Officer Gandy did not have probable cause to search his truck.
¶ 10. Stagg argues that the unfounded suspicion of his behavior with two teenage girls did not provide probable cause to suspect him of possessing contraband narcotics as would justify the officer’s subsequent search of the tie down hole in his pickup. Further, Stagg argues that before the officer could do such a search, he *383 should have gotten a warrant or, at least, should have used the drug-sniffing dog which was in his vehicle, since exigent circumstances did not exist. Stagg argues that Officer Gandy’s mere seeing a bag did not rise to the level of probable cause or give cause to search the vehicle or the hole in the back of his truck.
¶ 11. Before the trial, a hearing was conducted on the motion to suppress, at which time Stagg and Officers Ervin and Gandy testified. Officer Gandy testified that upon his initial observation of the two girls, he noticed that the older girl’s eyes were glassy looking as if she were on drugs. Upon seeing Stagg suspiciously pull up to the side of the station, Officer Gandy left the store to talk with Stagg and asked questions to determine whether or not Stagg was, indeed, the girls’ father. Officer Gandy then went back to talk with the girls to compare their answers with Stagg’s answers, and when he went back outside to talk with Stagg, he saw Stagg feverishly attempting to stuff a paper towel into the cargo hole of his truck. As he approached Stagg, Officer Gandy also eyed a little baggy hanging out of the towel, and the baggy appeared to contain contraband. Officer Gandy testified as to his prior experience in narcotics law enforcement and explained that, in his experience, the baggy he saw was the type which he had many times in the past seen to contain contraband.[1]
¶ 12. In this Court’s recent case of Roberson v. State, 754 So.2d 542(¶ 4) (Miss.Ct.App.2000), the defendant drove through a road block, then when the officers approached him they observed Roberson trying to hide a plastic bag in his hand. Roberson then shuffled the bag from one hand to the other eventually hiding the bag in his mouth, and from this the officers developed probable cause to further search Roberson. Id. Upon review, this Court found that the officers had a reasonable suspicion, grounded in specific and articulable facts, that Roberson was committing or about to commit a felony; thus, there was no error. Id. at (¶ 9). Roberson applies to the present case in that, under the circumstances as they occurred in Stagg’s case, we agree that Officer Gan-dy had probable cause; thus, we find no merit to this issue.
¶ 13. THE JUDGMENT OF THE SCOTT COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF METHAMPHETAMINE WHILE IN POSSESSION OF A FIREARM AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, PLUS PAY A $3,000 FINE, IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO SCOTT COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.

. Also, previous cases have noted that ziploc-type bags are commonly used to package drugs. See Sumrall v. State, 758 So.2d 1091(¶ 15) (Miss.Ct.App.2000); Sample v. State, 643 So.2d 524, 529 (Miss. 1994); Mickel v. State, 602 So.2d 1160, 1161 (Miss.1992); Hickman v. State, 592 So.2d 44, 47 (Miss.1991).