726 So.2d 1238 (1998)
Freeman CONNER a/k/a Freeman Lee Conner, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01431 COA.
Court of Appeals of Mississippi.
December 30, 1998.
Godfrey Ronald Tillman, Jackson, Attorney for Appellant.
Office of the Attorney General By Glenn Watts, Jackson, Attorney for Appellee.
Before THOMAS, P.J., and COLEMAN and HINKEBEIN, JJ.
*1239 THOMAS, P.J., for the Court:
¶ 1. Freeman Conner appeals to this Court his conviction of murder in the Clarke County Circuit Court. From that conviction, Conner was sentenced to life imprisonment with the Mississippi Department of Corrections. Feeling aggrieved, Conner assigns the following issues as error:
I. WHETHER THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR CHANGE OF VENUE
II. WHETHER THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT WHEN THE JURY'S VERDICT WAS CLEARLY CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On the morning of June 30, 1995, an altercation occurred between the appellant, Freeman Conner, and the victim, Terry Stokes, at Marvin's Tint Shop, Shubuta, Mississippi. The altercation between the two men ended in the shooting death of Terry Stokes.
¶ 4. Conner was at the Tint Shop visiting with Jarvis Williams while Williams installed window tinting to the car of Carl Lumnus. Also present at the Tint Shop was Audray Conner, the nephew of Freeman Conner. Freemen Conner was at the Tint Shop for a brief period of time when Stokes pulled up at the Tint Shop in a van. Stokes was giving Kutrinah Nelson a ride to Sarah's Beauty Shop. The Tint Shop and Sarah's Beauty Shop share an adjoining building.
¶ 5. Stokes noticed Conner's vehicle and motioned for Conner to come to the van and Conner complied. Stokes and Nelson exited the van, and Nelson went to Sarah's Beauty Shop. Stokes and Conner began to argue over Conner's dating Stokes's sixteen-year-old daughter. Based on the testimony of Kutrinah Nelson, Carl Lumnus, Jarvis Williams, and Audray Conner, the two men engaged in a heated argument for only a few minutes before gunshots were heard. None of the four witnesses actually saw Conner shoot Stokes; however, Lumnus testified that "he [Conner] backs up in my view and comes out of his pocket with a pistol and shoots either two or three times." Lumnus testified he then walked to the doorway and saw Stokes lying on the ground.
¶ 6. Conner testified that Stokes had made previous threats against him, with the most recent threat that morning, concerning his relationship with Stokes's daughter. Conner testified that during their confrontation at the Tint Shop, Stokes was very hostile and was "shaking his finger and just cursing." Conner further testified that he was unable to see Stokes's left hand as Stokes kept his hand hidden. Conner stated that he pulled the gun out of his pocket to bluff Stokes, but that Stokes stated "that don't scare me" and that Stokes made a sudden move like he was "coming out with something." Conner testified that he then "stepped back and just threw the gun up and shot." However, all witnesses, including Conner, testified that Stokes never produced a weapon of any type before, during, or after the altercation. Conner simply maintains that Stokes's previous threats combined with his hostile behavior and the sudden movement of Stokes's left hand justified his belief that he was in danger and therefore acted out of self-defense.

ANALYSIS

I.

WHETHER THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR CHANGE OF VENUE
¶ 7. Conner maintains that the pre-trial publicity was extensive enough to support a grant of his motion for change of venue. Specifically, Conner argues that an article *1240 contained in the September 4, 1996 edition of the Clarke County Tribune relating to his first trial resulted in an unduly prejudiced jury. The article was one of the headlines for that edition and read as follows:
Conners [sic] case ends in mistrial; other trial dates set
A murder case ended in a mistrial last week in Clarke County Circuit Court in the case of Freeman Conners [sic] of Shubuta. The jury vote was 11 for murder and one for manslaughter. Circuit Clerk Beth Doggett said a new trial date of January 13 has been set for Conners [sic]. Conners [sic], 30, is accused of shooting Terry Stokes, 37, of Shubuta after the two allegedly got into an argument on June 30, 1995 near a business in Shubuta. Conners [sic] was claiming self defense in the shooting incident.
¶ 8. Conner correctly argues that the right to a fair trial before a fair and impartial jury is fundamental under the United States Constitution. The well settled law of our State supports Conner's contention. Our supreme court has advised that "when it is doubtful" that a defendant's right to a fair and impartial jury can be guarantied in the "county where the crime occurred, venue should be changed." Hickson v. State 707 So.2d 536(¶ 25) (Miss.1997) (citing Eddins v. State, 110 Miss. 780, 783, 70 So. 898, 899 (1916)). However, in this case a scant amount of media coverage combined with a statutory failure to comply with the requirements of Miss.Code Ann. § 99-15-35 (Rev. 1994) in establishing prejudgment of the case is insufficient to cast cloud upon Conner's right to a fair trial before an impartial jury. We note from the outset that Conner failed to comply with § 99-15-35, specifically by not submitting the requisite "affidavits of two or more credible persons" as support for the defendant's motion for change of venue until the day of trial and after the jury pool had been called and seated.
¶ 9. In Johnson v. State, 476 So.2d 1195, 1214 (Miss.1985), the Mississippi Supreme Court acknowledged an all-pervasive media has the ability to reflect and affect the "public[`s] opinions and attitudes" and that as a result "the matter of extensive media exposure... is, however, a most important element to be considered relative to a change in venue." The court further noted that "when faced with a case which has been heavily reported in the news media, our trial courts must be prepared to readily grant a change of venue." Id. at 1215.
¶ 10. This holding was further exemplified in Holland v. State, 705 So.2d 307(¶ 98) (Miss.1997), where it was held that when determining whether a defendant's right to a fair and impartial jury has been hindered by pre-trial publicity: "Two factors are evaluated. First is the level of adverse publicity, both in the extent of coverage and its inflammatory nature. Second is the extent of the effect the publicity had upon the venire persons in the case."
¶ 11. It is readily apparent from the record that the extent of the media coverage, in the case sub judice, fails to achieve any meaningful level of "extensive" or "heavy" media coverage which could be reasonably inferred to have a prejudicial effect on the jury. The only media coverage in this case is a single news article printed in one edition of the community's local newspaper. The nature of the article exhibited no unnecessary "inflammatory" information indicative of any media bias which could sway the public's opinions and attitudes in one direction or another.
¶ 12. Despite Conner's failure to demonstrate any "extensive" or "heavy" media exposure in the coverage of his case or that the article's content was of such an inflammatory nature as to create a per se tainted venire, Conner equally fails under the second factor in Holland. The evaluation of whether pre-trial publicity has infringed upon a defendant's right to a fair and impartial jury also includes a determination of whether there are any actual effects resulting from pre-trial publicity and media coverage and their effect upon the venire, if any, regardless of the extensiveness of the media coverage.
*1241 ¶ 13. It is readily apparent from the record that despite Conner's untimely address of his motion for change of venue until the day of trial and his untimely submission of the requisite affidavits supporting his position, the trial court allowed Conner to voir dire the venire in detail about the pretrial publicity. The trial court stated that the motion for change of venue would be held under advisement until after the venire had been questioned regarding any pretrial publicity. The court further stated that should the court "hear enough out there during voir dire convincing me that it would be difficult or impossible for him [Conner] to have a fair trial, then I may very well grant [the motion for change of venue] and change the venue to another county."
¶ 14. During Conner's voir dire, the venire was questioned as to whether any of them subscribe to the Clarke County Tribune, how many read the paper every week, and how many had read anything in the Tribune concerning this case. For those who had read something about the case in the Tribune, further questioning followed. They were asked whether they remember anything about what they had read, whether they read the article in depth or just skimmed over it, and whether what they had read would in any way influence their decision one way or another. Only three of the potential jury members responded that they had read anything about the case and each of the three responded that they either did not remember much about the article or that it would not influence their respective decision one way or another.
¶ 15. Further review reveals that two of the three jurors who responded that they had read the article did not serve on the jury. Based upon these facts as contained within the record, Conner has failed to demonstrate that the extent of the pretrial publicity had any prejudicial or prejudgmental effect upon the individual jurors or the venire as a whole. By all indications Conner received a fair trial before a jury of fair minded and impartial peers without the prejudicial interference of extensive pretrial media coverage. Nor was his voir dire limited in this area so as to prevent a thorough questioning of the venire as alleged in his assignment of error. Therefore, this assignment is without merit.

II.

WHETHER THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT WHEN THE JURY'S VERDICT WAS CLEARLY CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 16. Conner alleges that the trial court erred in denying his motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. He argues that the jury's verdict was clearly against the overwhelming weight of the evidence particularly in light of the evidence produced at trial regarding his theory of self-defense.
¶ 17. In a motion for a judgment notwithstanding the verdict the correct challenge pertains to the sufficiency of the evidence supporting the jury's verdict of guilty. McClain v. State, 625 So.2d 774, 778 (Miss. 1993). Our standard of review in issues of the sufficiency of evidence is clear:
[T]he evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [Conner's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Jones v. State, 669 So.2d 1383, 1388 (Miss. 1995) (citing McClain v. State, 625 So.2d 774, 778 (Miss.1993)) (citations omitted).
*1242 ¶ 18. The trial court also denied Conner's alternative motion for a new trial. A motion for a new trial challenges the weight of the evidence. Butler v. State, 544 So.2d 816, 819 (Miss.1989). Our supreme court has stated:
As to motion for a new trial, the trial judge should set aside the jury's verdict only when, in the exercise of his sound judgment he is convinced that the verdict is contrary to the substantial weight of the evidence; this Court will not reverse unless convinced the verdict is against the substantial weight of the evidence.
Id. (quoting Russell v. State, 506 So.2d 974, 977 (Miss.1987)).
¶ 19. It is evident from the record before us that the jury was presented with conflicting theories and as such "is the judge of the weight and credibility of the testimony and is free to accept or reject all or some of the testimony given by each witness." Meshell v. State, 506 So.2d 989, 992 (Miss.1987). We cannot conclude that the evidence presented to the jury was such that reasonable and fair-minded jurors could only find the accused not guilty, nor is it evident that the evidence was so insufficiently weighted as to require a new trial. This assignment is without merit.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF CLARKE COUNTY OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO CLARKE COUNTY.
BRIDGES, C.J., McMILLIN, P.J., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE and SOUTHWICK, JJ., concur.