981 So.2d 1025 (2008)
Larry SMITH, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00225-COA.
Court of Appeals of Mississippi.
April 29, 2008.
*1027 Whitman D. Mounger, Greenwood, Wanda Turner-Lee Abioto, attorneys for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before KING, C.J., IRVING and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. Larry Smith was convicted of vehicular homicide in the Circuit Court of Leflore County for causing the death of George McCain. The circuit court sentenced Smith to twenty-five years in the custody of the Mississippi Department of Corrections. Aggrieved, Smith now appeals. He alleges the following issues:
I. Whether it was error to deny his motions for a directed verdict and for a judgment notwithstanding the verdict.
II. Whether it was error to deny his motion for a new trial because the verdict was against the weight of the evidence.
III. Whether it was error for Debra Sanders, the coroner, to testify regarding the blood alcohol test because she was not an expert in toxicology.

*1028 IV. Whether it was error to refuse requested defense jury instructions D-2 and D-3 and to grant jury instruction number three.
V. Whether it was error to deny the motion for a change of venue.
¶ 2. We find that it was error for the circuit court to allow Sanders to testify regarding McCain's blood test, but we find that error to be harmless. Therefore, we affirm Smith's conviction and sentence.

FACTS
¶ 3. On August 10, 2003, McCain, a former fire chief for the City of Greenwood, and his wife, Arlene, were out riding motorcycles. They met with some friends in their motorcycle club and rode to a horse show in Carroll County. On the return trip, Arlene split off from the group and rode home alone because she did not like riding on the highway and because some of the other members needed to stop for gas.
¶ 4. Shortly after arriving home, Arlene received a call informing her that her husband had been in an accident. McCain and Smith were in an automobile accident at the intersection of Highway 82 and County Road 520 in Leflore County. Emergency personnel found McCain's body on his three-wheel motorcycle, which had come to rest facing south on Highway 82. Debra Sanders, Leflore County coroner, arrived later and pronounced McCain dead at the scene. Smith was found in a nearby cotton field in his Oldsmobile along with a passenger, Sabrina Williams.
¶ 5. At the hospital, a nurse took a blood sample from Smith. A sample of McCain's blood was also taken at the scene. Analysis by the Mississippi Crime Laboratory revealed that Smith had a blood alcohol content of 0.22 on the night of the accident. Furthermore, Smith was driving with a suspended license at the time of the accident because he had previously received a citation for driving under the influence. Officer Cole Adams, with the Mississippi Highway Patrol, was the first trooper to arrive at the scene. He marked the accident site and took pictures. Officer Adams also discovered an empty beer can in Smith's car, which he said was cool as if it had been recently consumed.
¶ 6. At trial, Smith admitted he had been drinking, but he said he only had two beers. He also said that he was not turning off County Road 520 at the time of the accident. He claimed to have been driving on Highway 82 when McCain's motorcycle crashed into him. He said McCain was at fault because he was driving on the wrong side of the road. The State attempted to refute this with testimony that McCain was always meticulous in everything he did and that he had never received a traffic citation. Nevertheless, Smith claimed he was traveling east on Highway 82, and he was turning onto County Road 520 to take Williams home when McCain's motorcycle collided with his car.
¶ 7. With no objection from the defense, the circuit court allowed Officer Dennis Weaver, with the Mississippi Highway Patrol, to testify as an expert in the field of automobile accident reconstruction. Officer Weaver went to the scene on the night of the accident and viewed it as marked by Officer Adams. He diagramed the scene to scale and formed an opinion as to what occurred that night. Three days later, Officer Weaver returned to the scene to investigate further.
¶ 8. According to Officer Weaver, McCain was traveling west on Highway 82, and he had the right-of-way as he approached the intersection with County Road 520. Weaver said Smith was traveling south on County Road 520, and Smith turned into the westbound lane of Highway 82. As Smith turned onto Highway *1029 82, McCain slammed on his brakes, as evidenced by the skid marks made by the motorcycle. There were no skid marks attributable to Smith's car. The result was that McCain ran into the driver side door of Smith's Oldsmobile as Smith either ran the stop sign or failed to yield. The impact caused McCain to come out of his seat, but he struck Smith's car, causing his body to slump back onto the motorcycle. The motorcycle came to rest on Highway 82, and Smith's car was located in a cotton field, approximately 433 feet from the point of impact.
¶ 9. Officer Weaver testified that the intersection of Highway 82 and County Road 520 features no obstructions, and there is great visibility. He concluded that Smith was at fault even if he did stop at the stop sign because he failed to yield.
¶ 10. The jury returned a verdict finding Smith guilty of vehicular homicide, and the circuit court sentenced him to twenty-five years in the custody of the Mississippi Department of Corrections.

LAW AND ANALYSIS
I. Motions for Directed Verdict and Judgment Notwithstanding the Verdict
¶ 11. Smith first argues that the evidence the State presented failed to establish the necessary elements of vehicular homicide. He argues the State did not prove beyond a reasonable doubt that Smith drove negligently, which is an essential element of the crime. Because the State did not prove all the required elements, Smith concludes that the circuit court erred by denying his motions for a directed verdict and for a judgment notwithstanding the verdict.
¶ 12. In reviewing a trial court's denial of motions for a directed verdict and a judgment notwithstanding the verdict, we must look at the sufficiency of the evidence. Bush v. State, 895 So.2d 836, 843(¶ 15) (Miss.2005). We will ask whether the evidence shows "beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test[,] it is insufficient to support a conviction." Id. at (¶ 16) (quoting Carr v. State, 208 So.2d 886, 889 (Miss. 1968)). Taking the evidence in the light most favorable to the verdict, the question is whether a rational trier of fact could have found all the essential elements beyond a reasonable doubt. Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 13. Mississippi Code Annotated section 63-11-30 (Supp.2007) provides the following with regard to the crime of vehicular homicide:
(1) It is unlawful for any person to drive or otherwise operate a vehicle within this state who . . . has an alcohol concentration of eight one-hundredths percent (.08%) or more for persons who are above the legal age to purchase alcoholic beverages under state law. . . .
(5) Every person who operates any motor vehicle in violation of the provisions of subsection (1) of this section and who in a negligent manner causes the death of another . . . shall, upon conviction, be guilty of a separate felony for each such death. . . .
¶ 14. The jury instructions properly charged the jury with the elements of the crime, requiring that it find that Smith: (1) unlawfully and in a negligent manner (2) caused the death of McCain (3) by operating his motor vehicle with a blood alcohol content of at least 0.08 percent.
¶ 15. There was also evidence regarding each of the required elements. The *1030 State put on evidence that Smith ran the stop sign. Officer Weaver testified that Smith was at fault because he either ran the stop sign or he failed to yield. It was undisputed that McCain's death was a result of the collision with Smith. Lastly, Smith admitted drinking that night. Officers discovered an open beer can on the floorboard of Smith's car, and his blood alcohol content was 0.22, almost three times the legal limit. His mother even said he smelled of alcohol when she visited him at the hospital.
¶ 16. Taking the evidence in the light most favorable to the verdict, we find there was sufficient evidence for a rational trier of fact to find all the elements of vehicular homicide. The circuit court did not err in denying Smith's motions for a directed verdict and a judgment notwithstanding the verdict. This issue is without merit.
II. Motion for a New Trial
¶ 17. Smith next argues that the circuit court erred by refusing to grant his motion for a new trial. He argues the jury verdict was against the overwhelming weight of the evidence. Smith claims that there was no evidence that he was traveling on County Road 520 at the time of the accident, and the testimony of Officer Weaver, as an accident reconstruction expert, was based on insufficient evidence.
¶ 18. A motion for a new trial questions the weight of the evidence. Bush, 895 So.2d at 844(¶ 18). Such a motion is within the discretion of the trial court, which "should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." Id. (quoting Amiker v. Drugs for Less, Inc., 796 So.2d 942, 947(¶ 18) (Miss.2000)). "[W]e will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Id. When reviewing a denial of a motion for a new trial, we weigh the evidence in the light most favorable to the verdict. Id.
¶ 19. As we discussed in the previous point of error, the State put on sufficient evidence regarding each element of the crime of vehicular homicide. We now consider the weight of that evidence. Again, taking the evidence most favorably to the verdict, we find that the verdict was not overwhelmingly against the weight of the evidence.
¶ 20. The evidence was uncontradicted that Smith was intoxicated and that he caused the death of McCain. This established two of the elements of vehicular homicide.
¶ 21. As for the third element, the State presented testimony from Officers Weaver and Adams, who testified about how they found the scene and about how the accident occurred. They testified that the skid marks and the final resting place of the motorcycle indicated that McCain was traveling west on Highway 82 and that he collided with Smith because Smith either ran the stop sign or failed to yield. The State put on the evidence of Smith's intoxication and evidence of McCain's impeccable driving record and meticulous nature. Arlene also gave her version of events that night leading up to the accident.
¶ 22. Smith's version of the events contradicted that offered by the State. However, it is for the jury to judge the credibility of the witnesses. Jones v. State, 920 So.2d 465, 472(¶ 22) (Miss.2006) (citing Jackson v. State, 614 So.2d 965, 972 (Miss.1993)). In this case, the jury resolved the issue of credibility against Smith, and we find no error with this.
¶ 23. We do not agree with Smith's argument that his conviction was against the overwhelming weight of the evidence. *1031 In considering all the evidence, we find that it supports the jury's verdict. Accordingly, the circuit court did not err in denying Smith's motion for a new trial. This issue is without merit.
III. Testimony of the Coroner Regarding the Victim's Blood Test
¶ 24. Next, Smith takes issue with the fact that the circuit court allowed the coroner, Sanders, to testify regarding the results of McCain's blood alcohol test. Smith argues that Sanders was not qualified as an expert in toxicology; therefore, her testimony was inadmissible to prove the results of the test.
¶ 25. After the defense rested, the State recalled Sanders as a rebuttal witness. She testified that according to the crime lab, there was no alcohol found in McCain's blood stream. The actual report, which she said she brought in her purse was not mentioned until the defense asked about it on cross-examination. It was marked for identification only, and it was not entered into evidence. Nevertheless, the State did not qualify Sanders as an expert. The State called John Stevenson, a forensic specialist with the Mississippi Crime Laboratory, as their next rebuttal witness, but the State did not question him about the results of McCain's blood alcohol test.
¶ 26. To support his argument, Smith cites Bailey v. State, 956 So.2d 1016, 1029(¶ 43) (Miss.Ct.App.2007), in which this Court found it was error for a witness who was not qualified as an expert to testify regarding the results of a DNA test. Ultimately, in Bailey, we found the error to be harmless because the State later offered an expert witness who testified regarding the DNA test. Id. at (¶ 44). The present issue is similar to the issue in Bailey, in that, Sanders was not qualified as an expert. Therefore, we agree that it was not proper for her to testify as to the results of the blood alcohol test. Unlike Bailey, however, the State's expert, Stevenson, did not correct the error by testifying about the results of McCain's blood alcohol test. Initially, on cross-examination, Stevenson said he was unfamiliar with the results of McCain's blood alcohol test. When the State recalled him immediately after Sanders, neither party questioned him about the test on McCain's blood.
¶ 27. The State argues that the admission of Sanders's testimony was harmless error. An error involving the admission of evidence does not require reversal unless the error "adversely affects a substantial right of a party." Thornton v. State, 841 So.2d 170, 174(¶ 17) (Miss.Ct. App.2003) (citing Stallworth v. State, 797 So.2d 905, 908(¶ 8) (Miss.2001)). In regard to whether an error is harmless, the supreme court has said that "[t]he inquiry is not whether the jury considered the improper evidence or law at all, but rather, whether the error was unimportant in relation to everything else the jury considered on the issue in question." Kolberg v. State, 829 So.2d 29, 67 (¶ 101) (Miss.2002) (quoting Tanner v. State, 764 So.2d 385, 399-400(¶ 37) (Miss.2000)).
¶ 28. The adverse effect that Smith now complains of is that "[h]ad the test results been furnished to defense counsel, Smith's counsel would never have questioned the witnesses as to whether McCain had possibly been intoxicated." However, there was no evidence that McCain had been drinking on the night of the accident. The only testimony concerning that subject came from his wife, who said McCain did not drink any alcohol that day. McCain's blood test results were not at issue, and the State did not need to prove anything regarding McCain's sobriety. The testimony that Smith complains of did not even come up during the State's case-in-chief.
*1032 ¶ 29. We are unpersuaded by Smith's argument that Sanders's testimony regarding the results of McCain's blood alcohol test adversely affected a substantial right. Taking into account the other evidence, it was unimportant in the jury's deliberations. We have discussed in previous points of error that there was sufficient evidence to survive a directed verdict, and the guilty verdict returned by the jury was not against the weight of that evidence. We find this is so even without considering the improper testimony by Sanders.
¶ 30. We find that the circuit court's admission of Sanders's testimony constituted harmless error. This issue is without merit.
IV. Jury Instructions
¶ 31. Smith next argues that the circuit court improperly denied the defense's jury instructions, D-2 and D-3. Furthermore, he argues it was error to allow jury instruction number three. It is Smith's contention that there was no direct evidence that he was driving in a negligent manner, so the circuit court should have instructed the jury on circumstantial evidence.
¶ 32. A defendant is entitled to have the trial court give jury instructions that present his theory of the case; however, the court may deny an instruction that misstates the law, is covered elsewhere in the instructions, or is not supported by the evidence. Ladnier v. State, 878 So.2d 926, 931(¶ 20) (Miss.2004). This Court does not review jury instructions in isolation, but it will read them as a whole to determine whether the trial court properly instructed the jury. Milano v. State, 790 So.2d 179, 184(¶ 14) (Miss.2001). "When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." Id. (quoting Coleman v. State, 697 So.2d 777, 782 (Miss.1997)).
¶ 33. A circumstantial evidence instruction is necessary only when the State's case is based entirely on circumstantial evidence. Turner v. State, 910 So.2d 598, 602-03(¶ 17) (Miss.Ct.App.2005) (citing Gilleylen v. State, 255 So.2d 661, 663 (Miss.1971)). Such an instruction is not necessary if the State's case contains both circumstantial and direct evidence. Id. The supreme court has found that a defendant's admission to an important element of a crime negates the need for a circumstantial evidence instruction. Id. (citing Lynch v. State, 877 So.2d 1254, 1265(¶ 23) (Miss.2004)).
¶ 34. Accordingly, a defendant's admission that he had been drinking and driving may constitute direct evidence of guilt. See Turner, 910 So.2d at 603(¶ 19). Smith admitted he had been drinking on the night of the accident, and officers found an empty beer can in his truck. The results of his blood alcohol test also revealed that he had a 0.22 blood alcohol content. Smith's mother and the officers further testified that he smelled of alcohol.
¶ 35. We do not find the circuit court was in error in refusing defense's jury instructions, D-2 and D-3. They were both circumstantial evidence instructions requiring the jury to find Smith guilty to the exclusion of any reasonable hypothesis consistent with innocence. There was no need for such instructions as the State presented direct evidence of Smith's guilt. Smith's argument that jury instruction number three was in error because it did not hold the State to the higher burden of proof required in a circumstantial evidence case is also unfounded. When read as a whole, the jury instructions properly instructed the jury on the applicable law in *1033 this case. Accordingly, we find this issue to be without merit.
V. Motion for a Change of Venue
¶ 36. Lastly, Smith argues that the circuit court should have granted his pretrial motion for a change of venue. Referencing a newspaper article about the accident, Smith argues the jury was exposed to pretrial publicity regarding the accident. He claims it was error for the court to refuse to change venue because of such publicity.
¶ 37. The supreme court has stated the following with regard to a trial court's decision to deny a motion for a change of venue:
Where a defendant presents the court with an application for change of venue accompanied by two affidavits which affirm the defendant's inability to receive a fair trial in a particular location, a presumption is created that it is impossible for a fair trial to be had in that place. This presumption may be rebutted if the State proves from voir dire that the trial court impaneled an impartial jury. If the State makes such a showing of impartiality, this Court defers to the trial court's denial of the change of venue request, even in the face of adverse publicity, for the venue decision is, after all, within the discretion of the lower court.
Hickson v. State, 707 So.2d 536, 541-42(¶ 22) (Miss.1997) (citations omitted).
¶ 38. Mississippi Code Annotated section 99-15-35 (Rev.2007) provides the ground for granting a motion for a change of venue. It states that:
On satisfactory showing, in writing, sworn to by the prisoner, made to the court, or to the judge thereof in vacation, supported by the affidavits of two or more credible persons, that, by reason of prejudgment of the case, or grudge or ill will to the defendant in the public mind, he cannot have a fair and impartial trial in the county where the offense is charged to have been committed, the circuit court, or the judge thereof in vacation, may change the venue in any criminal case to a convenient county, upon such terms, as to the costs in the case, as may be proper.
Miss.Code Ann. § 99-15-35.
¶ 39. An application for a change of venue must conform strictly to this statute. Baldwin v. State, 732 So.2d 236, 241(¶ 10) (Miss.1999). Smith's motion for a change of venue was not made in writing, sworn to by the prisoner, or supported by affidavits from at least two credible persons. Therefore, this issue is without merit because Smith failed to comply with the statute.
¶ 40. Alternatively, this issue has no merit because the judge was within his discretion in refusing the request for a change of venue. We must consider the level of adverse publicity along with the "extent of the effect the publicity had upon the venire persons." Conner v. State, 726 So.2d 1238, 1240(¶ 10) (Miss.Ct.App.1998) (quoting Holland v. State, 705 So.2d 307, 336(¶ 98) (Miss.1997)). In this case, Smith presented only a single newspaper article, which was not inflammatory in nature. The article spoke fondly of McCain, but it did not mention who was at fault or that Smith had been drinking.
¶ 41. Furthermore, immediately following the judge's denial of the motion, defense counsel challenged eight jurors for cause. The judge granted six of those challenges for cause, and defense counsel removed a seventh with a peremptory challenge.
¶ 42. Because Smith failed to comply with the statutory requirements for a change of venue and because he failed to *1034 show any actual adverse publicity to warrant a change of venue, we find no merit to this argument.
¶ 43. THE JUDGMENT OF THE CIRCUIT COURT OF LEFLORE COUNTY OF CONVICTION OF VEHICULAR HOMICIDE AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEFLORE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.