LEE, P.J.,
 

 for the Court.
 

 PROCEDURAL HISTORY
 

 ¶ 1. On May 12, 2008, a jury in the Lafayette County Circuit Court convicted Cherelle L. German of felony child abuse. German was sentenced to forty years, with ten years suspended, thirty years to serve in the custody of the Mississippi Department of Corrections and five years of supervised probation. German filed several post-trial motions, including a motion for a new trial, a motion for a judgment notwithstanding the verdict, and a motion to reconsider sentencing. The trial court denied all of German’s post-trial motions. German now appeals, asserting the following issues: (1) his trial counsel was ineffective; (2) the trial court should have excluded the evidence related to a polygraph test; and (3) the verdict was contrary to the overwhelming weight of the evidence. Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. Toya Hilliard and German are the parents of Makia German.
 
 [1]
 
 On November 6, 2005, in Oxford, Mississippi, Hilliard was at work and had left Makia, who was two months old at the time, and Nevin, her two-year-old son, at home with her mother and German. German was asleep when Hilliard left for work. At some point that morning, Hilliard’s mother left the children with German. Hilliard came home that afternoon for approximately two hours before returning to work. Hilliard spent that time with Makia and noticed nothing out of the ordinary. Hilliard arrived home from work at approximately 7:30 p.m. and noticed that Makia was fussy, would not eat, and had bruises on her face. German told Hilliard that he had gone to another room for a few minutes and left Makia in a bouncy seat on the floor. Hilliard’s son was also in the room. German told Hilliard that he heard Makia cry, and upon returning to the room, he saw Makia’s bouncy seat turned on its side.
 

 ¶ 3. Alarmed by Makia’s condition, Hilli-ard and German ultimately decided to take Makia to the emergency room at the local hospital. Dr. Jason Waller, an emergency room physician, examined Makia and noticed bruising on both sides of the child’s face. Dr. Waller, noting that the bruises were inconsistent with falling out of a bouncy seat, ordered a CT scan of Makia’s head. Dr. Waller, suspecting child abuse, had a nurse notify a social worker. The Lafayette County Sheriffs Department was also notified.
 

 ¶ 4. Dr. Waller stated that the CT scan showed bleeding around Makia’s brain. Dr. Waller determined that Makia’s injuries were life threatening and arranged to have Makia transported to the pediatric intensive care unit at Le Bonheur Hospital in Memphis, Tennessee. Dr. Waller also testified that, as a result of her brain injury, Makia was severely developmentally disabled. Makia is blind; she cannot sit up; she must be fed through a feeding tube; she cannot walk or talk; and she has seizures.
 

 ¶ 5. Detective Scott Mills of the Lafayette County Sheriffs Department was dispatched to the emergency room that night. Detective Mills first took photographs of
 
 *351
 
 Makia and then interviewed Hilliard and German separately. Holly Jeffrey of the Mississippi Department of Human Services was also present. In addition to the facts as recited above, German also told Detective Mills that when he went back into the room after hearing Makia cry, Nevin was attempting to set the bouncy seat back upright. German also told Detective Mills that he watched Makia for fifteen or twenty minutes to make sure that she was not hurt.
 

 ¶ 6. After Makia was taken by helicopter to Le Bonheur, Hilliard and German went back to Hilliard’s home to pack to travel to Memphis. Detective Mills accompanied them in order to view the scene of Makia’s injury. Hilliard signed a consent for Detective Mills to search her home. Detective Mills took photographs of the house and the bouncy seat. German also demonstrated for Detective Mills what had occurred that afternoon.
 

 117. Dr. Greg Stidham, a pediatric intensive care physician at Le Bonheur, testified that Makia’s injuries included bleeding over the surface of the brain, swelling of the brain, retinal hemorrhages, facial bruising, and a skull fracture. Dr. Stid-ham testified that Makia was also having seizures from the brain injury. According to Dr. Stidham, Makia’s injuries were not likely caused by a fall from a bouncy seat. Dr. Stidham testified that the bleeding over the surface of the brain, the swelling of the brain, and the retinal hemorrhages were “almost exclusively caused in an infant under [one] year of age by a severe shake, a shake impact which would be a shake, a very vigorous, aggressive shaking with the impact of also hitting the head [on] some sort of a surface.”
 

 ¶ 8. On January 4, 2006, German again met with Detective Mills concerning Ma-kia’s injuries. Detective Mills testified that he advised German of his
 
 Miranda
 
 rights. German signed a waiver form and agreed to speak with Detective Mills. German told Detective Mills that Makia had been crying a lot that day, and her crying irritated him. German stated that he picked Makia up and shook her one time.
 

 DISCUSSION
 

 I. INEFFECTIVE ASSISTANCE OF COUNSEL
 

 ¶ 9. In his first issue on appeal, German argues that his trial counsel was ineffective. German cites several instances that he alleges show his trial counsel’s ineffectiveness. We will address each separately. First, we note that in order to successfully claim ineffective assistance of counsel, German must demonstrate that: (1) his attorney’s performance was deficient, and (2) such deficient performance deprived him of a fair trial.
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is a strong presumption that the attorney’s conduct fell within the wide range of reasonable professional assistance.
 
 Hiter v. State,
 
 660 So.2d 961, 965 (Miss.1995). German must show that, but for his attorney’s performance, he would have received a different outcome at the trial level.
 
 Stringer v. State,
 
 627 So.2d 326, 329 (Miss.1993).
 

 A. Testimony of Detective Mills
 

 ¶ 10. German contends that Detective Mills was allowed to give opinion testimony concerning Makia’s injuries without an objection by German’s trial counsel. During direct examination, Detective Mills described the photographs that he took of Makia in the hospital. These photographs were being introduced into evidence. Detective Mills stated that “you will also notice around the top of both of her eyes it appears to be redness like blood pooling behind her eyes and I observed that my
 
 *352
 
 self....” The State then asked Detective Mills about the injuries he observed. Detective Mills responded that “you will see the redness which [was] described to me as [sic] by the doctors as blood beginning to pool behind her eyelids.”
 

 ¶ 11. German argues that the first quote from Detective Mills’s testimony consisted of medical conclusions rather than his observations. We first note that trial counsel’s choice of whether to make certain objections falls within the scope of trial strategy.
 
 Hancock v. State,
 
 964 So.2d 1167, 1175(¶ 18) (Miss.Ct.App.2007). We are not persuaded that Detective Mills was offering any medical conclusion that only an expert could give; thus, we cannot find German’s trial counsel was ineffective for failing to object to the first statement.
 

 ¶ 12. German’s brief focuses more on Detective Mills’s second quote and claims that Detective Mills’s repetition of what the doctors told him was hearsay. Hearsay is defined as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” M.R.E. 801(c). This statement made by Detective Mills concerning what the doctors told him was hearsay. However, we find that German has failed to demonstrate how his trial counsel’s failure to object prejudiced his defense.
 

 B.Polygraph-test Evidence
 

 ¶ 13. German contends that his trial counsel was ineffective in eliciting testimony about German’s offer to submit to a polygraph examination. As German’s second issue concerns whether the trial court erred in allowing the polygraph testimony into evidence, we will address both issues together under Issue II.
 

 C. Stipulation of Makia’s Injuries
 

 ¶ 14. German contends that his trial counsel was ineffective for stipulating to the fact that Makia’s injuries were “se-vei’e and profound.” German argues that the portion of the statute under which he was indicted, Mississippi Code Annotated section 97 — 5—39(2)(a) (Rev.2006), states that the injury inflicted “cause serious bodily harm.” During her testimony, Hil-liard testified about Makia’s permanent damage. German’s trial counsel objected, stating that two doctors had already testified as to Makia’s condition. The State countered that if German was willing to stipulate as to Makia’s condition, then no further questions regarding that topic would be asked. German’s trial counsel conceded. We cannot find that this action by German’s trial counsel was deficient. German’s trial counsel was attempting to prevent the jury from hearing any more testimony about the lingering effects of Makia’s injuries.
 

 D. Circumstantial-evidence Instruction
 

 ¶ 15. Finally, German argues that his trial counsel was ineffective by failing to proffer a circumstantial-evidence jury instruction. German contends that because he did not admit to shaking Makia, then the case was circumstantial. However, German did admit to shaking Makia in his handwritten statement to the police on January 4, 2006. German’s “admission to an important element of [the] crime negates the need for a circumstantial[-]evidence instruction.”
 
 Smith v. State,
 
 981 So.2d 1025, 1032(¶ 33) (Miss.Ct.App.2008). We cannot find German’s trial counsel deficient in this regard.
 

 II. POLYGRAPH-TEST EVIDENCE
 

 ¶ 16. In his second issue on appeal, German argues that it was reversible error for the trial court to allow the evidence related to a polygraph test in front
 
 *353
 
 of the jury, notwithstanding his trial counsel’s insistence to do so. We will also address whether German’s trial counsel was ineffective in eliciting this evidence. The supreme court held in
 
 Weatherspoon v. State,
 
 732 So.2d 158, 163(¶ 15) (Miss.1999), that “any evidence pertaining to a witness’s offer to take a polygraph [test], refusal to take a polygraph test, the fact that a witness took a polygraph test or the results of a polygraph test is inadmissible at trial by the State or by the defense.” However, we are not required to reverse in every instance in which such evidence is admitted.
 
 Id.
 
 Where the claimed error involves the admission or exclusion of evidence, we will only reverse if the error adversely affects a substantial right of a party.
 
 Stallworth v. State,
 
 797 So.2d 905, 908(¶ 8) (Miss.2001). In determining whether the error in admitting evidence related to a polygraph is so severe as to require reversal, we must engage in a case-by-case analysis, looking to the “nature of the error and the circumstances attendant to [the evidence’s] disclosure.”
 
 Weatherspoon,
 
 732 So.2d at 163(¶ 15).
 

 ¶ 17. During the cross-examination of Detective Mills, German’s trial counsel asked him why German was at the sheriffs department on January 4, 2006. After approaching the bench, the State informed the trial court that German was at the department to undergo a polygraph examination.
 
 [2]
 
 German’s trial counsel stated that he wanted this information on the record for two reasons. One reason was because the jury was under the impression that German came to the sheriffs department to confess to the crime. The other reason was that the person conducting the polygraph test was not actually a person who conducts polygraph tests but who was there to interrogate German without reading German his
 
 Miranda
 
 rights. German apparently spoke with this person outside the presence of Detective Mills, and approximately an hour later, this person informed Detective Mills that German had decided to forgo the polygraph test and admit that he had shaken Makia.
 

 ¶ 18. The trial court initially refused to allow this evidence, but after much discussion with the parties and the persistence of German’s trial counsel, the trial court allowed this information to go before the jury. During German’s direct examination, much of his testimony concerned the questioning by the polygraph examiner. German was attempting to show that he was under duress from the improper questioning. German also informed the jury that he wanted to take the polygraph test, but the examiner kept interrogating him and, ultimately, told Detective Mills that German wanted to confess. German testified that he never told the polygraph examiner that he wanted to confess.
 

 ¶ 19. In terms of whether or not German’s trial counsel was ineffective for entering this evidence into the record, we conclude that this falls under the scope of trial strategy. Much of German’s defense was built around the information contained in his second statement of January 4, 2006. This second statement is the first time German stated that he shook Makia. German attempted to show the jury that he was tricked into making this statement during his interrogation by the polygraph examiner.
 

 ¶ 20. In terms of whether or not it was reversible error for the trial court to allow this evidence into the record, we find
 
 *354
 
 that it was not reversible error. After hearing German’s trial counsel’s reasons for introducing the evidence related to the polygraph test, the trial court stated that it understood that German was trying to establish the nature of the interrogation. “Whenever a defendant makes a calculated, tactical choice and comes out on the losing end, he cannot then shift the burden to the [S]tate or to the trial [court].”
 
 Lancaster v. State,
 
 472 So.2d 363, 366 (Miss.1985). This issue is without merit.
 

 III. OVERWHELMING WEIGHT OF THE EVIDENCE
 

 ¶ 21. Although German’s last issue is styled “overwhelming weight of the evidence,” his argument and citing authorities concern whether the evidence was legally sufficient to sustain his conviction. Thus, we will determine whether the evidence was sufficient to convict German of felony child abuse.
 

 ¶ 22. A motion for a JNOV challenges the sufficiency of the evidence.
 
 Bush v. State,
 
 895 So.2d 836, 843(¶ 16) (Miss.2005). “[T]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.’ ”
 
 Id.
 
 (citation omitted). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of the crime existed, this Court will affirm the denial of the motion for a JNOV.
 
 Id.
 
 If we find that reasonable, fair-minded jurors could have concluded that the defendant was guilty of the accused crime, the evidence will be deemed sufficient.
 
 Id.
 
 Furthermore, the jury is responsible for weighing any conflicting evidence, “evaluating the credibility of witnesses, and determining whose testimony should be believed.”
 
 Ford v. State,
 
 737 So.2d 424, 425(¶ 8) (Miss.Ct.App.1999).
 

 ¶ 23. German contends that he did not confess to shaking Makia; thus, the case against him was circumstantial. German claims that there is no direct evidence of the actions necessary to result in the serious bodily harm of Makia. However, German admitted in a handwritten statement that he had shaken Makia. Although German did not admit to the severity of the shaking, there was testimony from two doctors that Makia’s injuries could not have been caused by a fall from a bouncy seat. One physician specifically stated that Makia’s injuries were exclusively caused by a severe shake with the impact of her head hitting a surface. German admitted that he was the only adult present when Makia’s bouncy seat supposedly overturned. From the evidence presented, we find that reasonable, fair-minded jurors could have concluded that German was guilty of felony child abuse. This issue is without merit.
 

 ¶ 24. THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT OF CONVICTION OF FELONY CHILD ABUSE AND SENTENCE OF FORTY YEARS, WITH TEN YEARS SUSPENDED AND THIRTY YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FIVE YEARS OF SUPERVISED PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAFAYETTE COUNTY.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. BARNES, J., CONCURS IN RESULT ONLY.
 

 [1]
 

 . Makia's first name is spelled inconsistently throughout the record. For clarity, we will refer to the child as "Makia." Likewise, her brother’s name is spelled “Neven” and "Nev-in” in the record. We will refer to him as "Nevin.”
 

 [2]
 

 . German was actually at the sheriff's department because he was in custody on a misdemeanor charge. The polygraph test had been scheduled for January 5, 2006, but since German was there, he agreed to take the polygraph test a day early. Apparently, Hilliard, German, and Hilliard's mother were all scheduled to take a polygraph test on January 5.